STATE of Missouri, ex rel. SAINT LOUIS CHARTER SCHOOL, Appellant,

v.

STATE BOARD OF EDUCATION, and Department of Elementary and Secondary Education; and Special Administrative Board of the Transitional School District of the City of St. Louis, Respondents.

No. WD 74318.

Missouri Court of Appeals, Western District.

Sept. 18, 2012.

Jay Summerville, St. Louis, MO; Jeffery T. McPherson, Clayton, MO; Sherry L. Doctorian, St. Louis, MO, for appellant.

James R. Layton, Jefferson City, MO and Thomas L. Caradonna, St. Louis, MO, for respondent.

Before DIVISION ONE: JAMES M. SMART, Presiding Judge, LISA WHITE HARDWICK and GARY D. WITT, Judges.

LISA WHITE HARDWICK, Judge.

Saint Louis Charter School ("SLCS") appeals the circuit court's decision denying its request for mandamus relief. SLCS contends the court erred in refusing to direct the Department of Secondary and Elementary Education ("DESE") to authorize payment of the amount of state school aid that DESE determined SLCS was underpaid for three years. SLCS also asserts the court erred in refusing to direct DESE to determine the amount of state aid that SLCS was allegedly underpaid for a fourth year and to authorize payment of that amount to SLCS. Because the circuit court has not yet ruled on SLCS's request for judicial review of DESE's decision not to authorize payment of the amount SLCS was underpaid, there is no final judgment in this case. Therefore, the appeal is dismissed, and the cause is remanded to the circuit court for further proceedings.

### FACTUAL AND PROCEDURAL HISTORY

SLCS is a charter school created pursuant to the Charter Schools Act, Sections 160.400 to 160.420, RSMo.[1] A charter school is an independent public school that may be operated in an urban or metropolitan school district. § 160.400. SLCS is op-

---

1. All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2011, unless otherwise indicated.

erated in the Saint Louis Public School District ("School District").

For several years, SLCS received its state school aid funds directly from the School District. Under this system, DESE calculated the School District's annual state aid apportionment using a statutory formula and paid that amount in twelve monthly installments. §§ 163.031, 163.081.2, RSMo 2000. For purposes of this calculation, students attending charter schools within the District were counted in the School District's enrollment figures because they resided in the District. § 160.415.1, RSMo 2000. DESE would distribute the state school aid funds to School District, and the School District, acting as a disbursal agent, was then responsible for distributing the funds to the charter schools operating within their boundaries within twenty days after receiving payment from DESE. §§ 163.081, 163.087, 160.415.2, RSMo 2000. The School District was required to pay charter schools an amount calculated pursuant to the statutory formula plus any other state or federal aid received "on account of" children who were attending charter schools instead of the District's schools. §§ 160.415.2, 163.081.2, RSMo 2000.

After July 2006, a charter school could declare itself to be a "local educational agency" ("LEA") and, by doing so, receive its monthly state school aid payments directly from DESE instead of the school district. § 160.415.4. In 2007, SLCS declared itself to be an LEA and, starting with fiscal year ("FY") 2007–2008,[2] SLCS began receiving its state school aid funds directly from DESE.

Shortly after SLCS became an LEA, an independent financial consultant reviewed SLCS's past financial operations and found discrepancies between the amount of state funding to which SLCS was entitled and

the amount of state funding SLCS had actually received from the School District when the District was acting as the disbursal agent. In letters sent to DESE in early and mid–2007, SLCS questioned the amount of the School District's payments for FY 2006–2007 and requested DESE's assistance in resolving the matter. In response, DESE told SLCS that it was unable to confirm an underpayment and asked SLCS to provide copies of monthly payment transmittals received from the School District.

In October 2008, SLCS sent DESE a statement of claims and demand for adjudication requesting that DESE adjudicate its claims that the School District had underpaid it during each year from FY 2003–2004 through FY 2006–2007. In addition, SLCS requested that DESE pay it $3,858,637.55, the total amount it claimed the School District had underpaid between 2003 and 2007, and deduct that amount from DESE's next state school aid apportionment to the School District. SLCS also asked that DESE provide a timeframe for when it would resolve these issues.

By January 21, 2009, DESE had not issued a ruling or indicated a timeframe for when a resolution might be expected. Consequently, SLCS filed a petition for a writ of mandamus compelling DESE and the State Board of Education to adjudicate its claim of underpayment and to authorize payment to SLCS in the amount of the underpayment. The School District moved for leave to intervene, which the circuit court granted.

After SLCS filed its original petition, DESE advised SLCS in a letter, dated April 1, 2009, that it was "unable to make the correction in payment as requested." DESE explained that, while Section 160.415.5 "authorizes corrections in errone-

---

2. Fiscal years begin on July 1.

ous monthly state aid payments and the resolution of disputes regarding such payments," SLCS did not dispute the amount of any of the School District's payments until "well after" SLCS had elected to become an LEA and to receive state aid payments directly from DESE.[3] DESE further explained:

The calculation of charter payments under the current foundation formula is a complex process which has required both DESE and the [School District] to interpret several areas of the law. As you know, reasonable minds can differ in making these interpretations. Nevertheless, differences in the methods used by the [School District] and DESE in making these calculations do not justify the remedy of reducing payment to the [School District] prospectively based upon past payments that were made and accepted without dispute.

SLCS subsequently filed an amended petition. In Count I of its amended petition, SLCS again sought a writ of mandamus compelling DESE: (1) to adjudicate SLCS's claims of underpayment from FY 2003–2004 through FY 2006–2007; (2) to authorize payment to SLCS of the amount due; and (3) to deduct the same amount from the next school state aid apportionment to the School District. In Count II of its amended petition, SLCS sought judicial review of DESE's April 1, 2009 letter denying its request that DESE make the correction in payments to make up the alleged underpayments.[4] SLCS asserted DESE's April 1, 2009 letter was a final

administrative decision subject to judicial review under Section 536.150.

Both DESE and the School District moved to dismiss SLCS's petition. After hearing legal arguments on SLCS's petition and the motions to dismiss, the court issued its "Order, Judgment, and Writ of Mandamus" on November 30, 2009. In this order, the court sustained the petition for writ of mandamus and directed DESE "to perform the duty of adjudicating [SLCS]'s claims for underpayment forthwith."

In February 2010, DESE provided to SLCS its calculations of the statutory amounts that SLCS was entitled to receive for FY 2003–2004 through FY 2006–2007. After SLCS received these calculations, it filed a motion to compel asking the court to order DESE to deduct the difference between DESE's calculated statutory amounts and the payments SLCS claimed the District made during the fiscal years in question from DESE's next school aid apportionment to the District. SLCS further asked the court to order DESE to pay that amount, which it asserted totaled $4,309,488.17 including interest, to SLCS.

The circuit court granted the motion to compel in part. In its order, the court found that DESE had completed a portion of the adjudication of the dispute between SLCS and the School District by determining the amounts the School District should have paid to SLCS in the relevant school years. To "complete the adjudication," the court ordered that SLCS and the School

---

3. Section 160.415.5 provides, in pertinent part, "If a charter school is paid more or less than the amounts due pursuant to this section, the amount of overpayment or underpayment shall be adjusted equally in the next twelve payments by the school district or the department of elementary and secondary education, as appropriate."

4. Judicial review of DESE's decision is authorized by Section 160.415.5, which states that "[a]ny dispute between the school district and a charter school as to the amount owing to the charter school shall be resolved by the department of elementary and secondary education, and the department's decision shall be the final administrative action for the purposes of review pursuant to chapter 536, RSMo."

District provide DESE with a stipulation of the amount of payments that the School District actually made to SLCS "in the relevant school years." If SLCS and the School District could not agree on a stipulation, they were to give DESE the evidence they believed was relevant to determining the amount of payments made. Based on the information it received from SLCS and the School District, DESE was to provide the court with an adjudication of the amount of any underpayments or overpayments. The order concluded with the court's stating that, after it received DESE's adjudication, the court would "then determine whether any additional relief is required."

SLCS and the School District filed a stipulation stating the amount of the School District's payments for FY 2004–2005, FY 2005–2006, and FY 2006–2007. They provided no information regarding payments for FY 2003–2004. DESE calculated the amount of the underpayment for FY 2004–2005 to be $562,710.62, for FY 2005–2006 to be $623,716.13, and for FY 2006–2007 to be $1,501,142.44.

SLCS subsequently filed a motion for summary judgment in which it requested a writ of mandamus compelling DESE to pay it these amounts, plus $676,416.27 for FY 2003–2004,[5] and to deduct the amount from the next state school aid apportionment to the School District. The court denied the summary judgment motion. SLCS then filed a request for payment in which it asked the court for a judgment directing DESE "to determine the amounts due for the 2003–2004 school year and pay over the amounts improperly withheld for the 2003–2004 through 2006–2007 school years."

In July 2011, the court denied SLCS's request for payment after finding that "mandamus does not lie to compel the transfer of funds." SLCS appeals.

### AUTHORITY FOR APPELLATE REVIEW

■ Before we can address SLCS's points on appeal, we have a duty to determine whether we have the authority to review the appeal. *House Rescue Corp. v. Thomas,* 328 S.W.3d 267, 272 (Mo.App. 2010). We acquire the authority to review a case upon the issuance of a "final judgment" from a court below. § 512.020; Rule 74.01. If the court's judgment is not final, we lack the authority to consider the appeal on its merits and must dismiss it. *House Rescue Corp.,* 328 S.W.3d at 272.

■ SLCS contends that the court's order denying its request for payment was appealable as a special order after final judgment under Section 512.020(5). A "special order after final judgment" refers to " 'the orders in special proceedings attacking or aiding the enforcement of the judgment after it has become final in the action in which it was rendered.' " *GUI, Inc. v. Adams,* 978 S.W.2d 515, 517 (Mo. App.1998) (citation omitted). SLCS argues it was seeking to enforce the court's November 30, 2009 "Order, Judgment, and Writ of Mandamus," which compelled DESE to adjudicate SLCS's claim for underpayment, by way of a further order compelling DESE to pay over the amounts it determined from the adjudication to be underpaid.

The School District disagrees with SLCS's contention, arguing that SLCS's request for payment did not seek to enforce the November 30, 2009 "Order, Judgment, and Writ of Mandamus" but, rather, to expand it. Specifically, the School District asserts that SLCS's re-

---

**5.** The $676,416.27 figure is the amount DESE estimated SLCS was entitled to receive for FY 2003–2004. SLCS asserted in an affidavit that the School District made no payments in FY 2003–2004. The School District denied this assertion in an affidavit.

quest for payment was actually a post-judgment request to expand the scope of the November 30, 2009 "Order, Judgment, and Writ of Mandamus" to include an order compelling payment in addition to the order compelling adjudication. Because SLCS's request for this additional relief was filed well beyond thirty days after the entry of the November 30, 2009 "Order, Judgment, and Writ of Mandamus," the School District argues that the circuit court's denial of that request was not an appealable order.

We find neither of these contentions to be accurate, as both are premised on the erroneous assumption that the November 30, 2009 "Order, Judgment, and Writ of Mandamus" was a final judgment. It was not a final judgment, nor was the court's purported "judgment" denying SLCS's request for payment a final judgment. No final judgment has been entered in this case.

We recognize that, when the circuit court issued the November 30, 2009 "Order, Judgment, and Writ of Mandamus," it expressly stated that "this Order, Judgment, and Writ of Mandamus resolves all issues as to all parties. This is a final judgment for the purposes of Rule 74.01." We also recognize that the court designated its denial of SLCS's later request for payment as a "judgment." The circuit court's designation of these rulings as final judgments is not conclusive, however, because we must independently determine if the judgments actually qualify as final judgments. See *Huff v. Dewey & LeBoeuf, LLP*, 340 S.W.3d 623, 627 (Mo.App. 2011).

██ A final judgment must dispose of all parties and all issues in the case and leave nothing for future determination. *Goodson v. Nat'l Sports & Recreation, Inc.*, 136 S.W.3d 98, 99 (Mo.App.2004).[6] "A judgment which resolves fewer than all legal issues as to any single 'claim for relief' is not final notwithstanding the trial judge's designation as such." *Comm. for Educ. Equality v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994). To determine whether a judgment is final, " 'we look to the judgment's content, substance, and effect.' " *Huff*, 340 S.W.3d at 627 (citation omitted).

The November 30, 2009 "Order, Judgment, and Writ of Mandamus" stated that it was ruling on SLCS's amended petition for mandamus or, in the alternative, for judicial review. The counts in SLCS's amended petition requested remedies on the same two issues: DESE's refusal to adjudicate SLCS's claims of underpayment and DESE's refusal to authorize payment to SLCS of the amount of any underpayment. In Count I, SLCS sought a writ of mandamus compelling DESE to take those actions; in Count II, SLCS sought judicial review, pursuant to Section 536.150, of DESE's refusal to do so.

The November 30, 2009 "Order, Judgment, and Writ of Mandamus" sustained SLCS's petition for writ of mandamus and directed DESE "to perform the duty of adjudicating [SLCS]'s claims for underpayment forthwith." The order was silent as to SLCS's request that the court either compel DESE to authorize payment to SLCS of the amount of any underpayment or grant judicial review of DESE's deci-

---

6. While Rule 74.01(b) allows the circuit court to designate as final "a judgment as to one or more but fewer than all of the claims," the court can only do so "upon an express determination that there is no just reason for delay." Neither the November 30, 2009 "Order, Judgment, and Writ of Mandamus" nor

the "judgment" denying SLCS's request for payment indicated that they were resolving only some of the claims, nor did they contain an express determination of "no just reason for delay." Even if they had, however, they would not have constituted final judgments for the reasons discussed *infra*.

sion refusing to authorize payment to SLCS of the amount of any underpayment.

Although the court broadly stated it was sustaining SLCS's petition for writ of mandamus, the court's subsequent rulings clearly indicate that the November 30, 2009 "Order, Judgment, and Writ of Mandamus" did not include an order compelling DESE to authorize payment to SLCS of the amount of any underpayment. Specifically, after DESE determined the amount SLCS should have received from the School District, SLCS filed a motion to compel asking the court to order DESE to authorize payment of the amount it was underpaid. In ruling on this motion, the court directed DESE to "complete the adjudication" by determining the amount of any payments the School District actually made during the relevant years and calculating the amount of any underpayment. The court declined, however, to compel DESE to authorize payment to SLCS of the calculated amount. Likewise, in denying SLCS's request for payment of the amount DESE determined was underpaid, the court explicitly stated that "mandamus does not lie to compel the transfer of funds."

The content, substance, and effect of the November 30, 2009 "Order, Judgment, and Writ of Mandamus" indicate that the court granted a remedy with regard to only one of the issues SLCS raised in its amended petition: DESE's decision refusing to adjudicate the amount of any underpayment. The court determined that the appropriate remedy to resolve this issue was a writ of mandamus directing DESE to adjudicate the amount of any underpayment. The court's granting this mandamus relief, which SLCS prayed for in Count I of its amended petition, disposed of SLCS's alternative prayer in Count II for judicial review of DESE's decision refusing to make the adjudication.

As we have noted, however, SLCS's amended petition also requested the remedies of either mandamus relief or judicial review of DESE's decision refusing to authorize payment to SLCS of the amount the School District had underpaid it. In its "judgment" denying SLCS's request for payment, the court expressly determined that mandamus relief did not lie to compel DESE to take this action. The court's determination that mandamus relief was not available, however, did not dispose of SLCS's alternative request in Count II for judicial review of DESE's decision refusing to authorize payment to SLCS of the amount of the underpayment. Section 536.150.1 provides for judicial review of administrative decisions in noncontested cases such as this one. *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 508 (Mo. banc 2009). The circuit court's review is *de novo*, in that the court "hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion." *Id.*

"[A] judgment that disposes of only one of several remedies and leaves other remedies relating to the same legal rights open for future adjudication is not a final judgment." *Comm. for Educ. Equality*, 878 S.W.2d at 450. The purported judgments in this case disposed of only SLCS's request for mandamus relief and did not dispose of SLCS's request for judicial review of DESE's decision refusing to authorize payment of the amount of the underpayment. Because the remedy of judicial review of this issue is open to future adjudication, there is no final judgment in this case and the appeal must be dismissed.

CONCLUSION

The appeal is dismissed.

All Concur.