

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| STATE OF MO EX REL SAINT LOUIS CHARTER SCHOOL, | ) |
| | ) |
| | )    **WD76828** |
| **Appellant,** | ) |
| | )    **OPINION FILED: August 5, 2014** |
| v. | ) |
| | ) |
| STATE BOARD OF EDUCATION, AND DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION, AND SPECIAL ADMINISTRATIVE BOARD OF THE TRANSITIONAL SCHOOL DISTRICT OF THE CITY OF ST. LOUIS, | ) ) ) ) ) ) ) ) ) |
| | ) |
| **Respondents.** | ) |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Patricia S. Joyce, Judge

Before Division Three: Gary D. Witt, Presiding Judge, Joseph M. Ellis, Judge and Thomas H. Newton, Judge

This is an appeal from the trial court's grant of summary judgment in favor of the Department of Elementary and Secondary Education and State Board of Education against the St. Louis Charter School. We conclude that the trial court erroneously

declared and applied the law when it granted summary judgment to the State. Implicit in its grant is an interpretation of section 160.415.5[1] that is erroneous.

We reverse the judgment and remand with instructions.

## FACTS AND PROCEDURAL HISTORY[2]

The St. Louis Charter School ("Charter") is a charter school created pursuant to the Charter Schools Act, sections 160.400 to 160.425. Charter sued the Missouri State Board of Education ("Board") and the Department of Elementary and Secondary Education ("DESE") (or collectively the "State") to recover state aid which it alleged was underpaid by the St. Louis School District (the "District"). A charter school is an independent public school that operates within an urban or metropolitan school district. § 160.400. Charter is operated within the District.

During the years in dispute, the state school aid to which Charter was entitled was disbursed by the State to the District, who then disbursed the aid to Charter. Under this system, DESE calculated the District's annual state aid apportionment using a statutory formula and paid that amount to the District in twelve monthly installments. §§ 163.031, 163.081.2. For purposes of this calculation, students attending charter schools within the District were counted in the District's enrollment figures because they resided in the District. § 160.415.1. DESE would distribute the state school aid funds to the District,

---

[1] All statutory references are to RSMo 2000 cumulative as supplemented unless otherwise indicated.

[2] This Court fully reviewed the facts and procedural history in an earlier opinion related to this issue involving the same parties. Thus, many of the facts as stated are taken from *State ex rel. Saint Louis Charter School v. State Bd. of Educ.*, 376 S.W.3d 712, 713-16 (Mo. App. W.D. 2012) ("*Charter I*")without further attribution. For additional factual background, a review of that opinion may be appropriate. We view the facts in the light most favorable to the party against whom judgment was entered and afford that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The facts are generally undisputed by the parties.

and the District, acting as DESE's disbursal agent, was then responsible for distributing the funds to the charter schools operating within their boundaries within twenty days after receiving each payment from DESE. §§ 163.081, 163.087, 160.415.2. The District was required to pay Charter schools an amount calculated pursuant to the statutory formula plus any other state or federal aid received "on account of" children who were attending Charter schools. §§ 160.415.2, 163.081.2.

Beginning in July 2006, a charter school was authorized to declare itself to be a "local educational agency" ("LEA") and, by doing so, it was to receive its monthly state school aid payments directly from DESE instead of having the aid pass through the District. § 160.415.4. In 2007, Charter declared itself to be an LEA and, beginning with fiscal year ("FY") 2007–2008,[3] Charter began receiving its state school aid funds directly from DESE.

Shortly after Charter became an LEA, an independent financial consultant reviewed Charter's past financial operations and found apparent discrepancies between the amount of state aid to which Charter was entitled and the amount of state aid Charter had actually received from the District when the District was acting as the disbursal agent. In letters sent to DESE in early and mid–2007, Charter questioned the amount of the District's payments for FY 2006–2007 and requested DESE's assistance in resolving the matter. In response, DESE told Charter that it was unable to confirm an underpayment and asked Charter to provide copies of monthly payment transmittals it had received from the District.

---

[3] Fiscal years begin on July 1 of each year and end on June 30 of the following year.

In October 2008, Charter sent DESE a statement of claims and demand for a resolution and correction of state aid payments pursuant to sections 160.415.5 and 163.091, requesting that DESE adjudicate its claims that the District had underpaid it during each year from FY 2003–2004 through FY 2006–2007, and deduct that amount from DESE's future state school aid payments to the District. By January 21, 2009, DESE had not issued a ruling or indicated a timeframe for when a resolution might be expected. Consequently, Charter filed a petition in the trial court requesting a writ of mandamus compelling DESE and the Board to act. The District moved for leave to intervene, which was granted.

The trial court issued its "Order, Judgment, and Writ of Mandamus" on November 30, 2009. In this order, the court sustained the petition for writ of mandamus and directed DESE "to perform the duty of adjudicating [Charter]'s claims for underpayment forthwith."

Pursuant to an order from the trial court, DESE calculated the underpayment and notified the parties. The order further stated that after it received DESE's calculations, the court would "then determine whether any additional relief is required." DESE calculated the amounts of the underpayment for each disputed fiscal year to be as follows:

FY 2003–2004 = $693,526.27,[4]
FY 2004–2005 = $562,710.62,
FY 2005–2006 = $623,716.13, and

[4] The underpayments for FY 2004-2005 through FY 2006-2007 were determined by DESE by April of 2009. The underpayment as to FY 2003-2004 was not determined until after the initial appeal to this court. The subsequent determination of the amount of the underpayment for FY 2003-2004, further supports our conclusion that the prior judgment of the trial court was not final for purposes of appeal in *Charter I*.

4

FY 2006–2007 = $1,501,142.44.[5]

In July 2011, the court denied Charter's request for an order requiring payment after finding that "mandamus does not lie to compel the transfer of funds." Charter appealed and this Court dismissed the appeal finding that the judgment was not final in that while it disposed of the mandamus issue by ordering DESE to calculate the amounts of underpayment, it did not address Charter's request for judicial review of DESE's refusal to pay those amounts to Charter. *Charter I*, 376 S.W.3d at 718.

Following our dismissal of the appeal, Charter filed a second amended petition. In Count I, Charter asked the court to issue a writ of mandamus ordering DESE to perform its statutory duty of resolving the dispute by determining the final amount of money owed Charter and ordering that amount to be paid. In Count II, in the alternative, Charter requested an administrative review of DESE's decision should the court determine that DESE "made a final administrative determination with respect to its requests." The State then filed a motion for judgment on the pleadings in which it requested that the trial court issue a judgment finding that the State "is not required to withhold funds payable from state appropriations payable to the District, and pay over the amounts withheld from the District" to Charter for school years 2003-2007. Attached to its motion was DESE's final calculation of underpayment amounts for school years 2003-2007.

---

[5] Charter and the District stipulated to the amounts of payments Charter received from the District during the disputed timeframe. Based upon their stipulation, DESE subsequently determined that certain amounts were underpaid for each fiscal year listed. District acknowledged at oral argument that it has not proceeded with an action or motion to challenge the accuracy of these amounts because, in a non-contested case, there is no statutory limit on when the challenge to the administrative determination may be filed other than it must be within a "reasonable time." *See State ex rel. Martin-Erb v. Mo. Comm'n on Human Rights*, 77 S.W.3d 600, 609 (Mo. banc 2002).

On August 5, 2013, the trial court granted the State's motion for judgment and entered judgment for the State "on all remaining claims for relief in Counts I and II of Charter's Second Amended Petition."[6]  This appeal follows.  Further facts are set forth below as necessary.

## ANALYSIS

In Point One, Charter argues that the trial court erred in granting summary judgment to DESE and in refusing to direct DESE to pay Charter the sums that were underpaid because the court erroneously declared and applied section 160.415.5[7] to mean that DESE did not have a duty to authorize payment to Charter and in finding that mandamus did not lie to compel payment.  In Point Two, Charter contends that, in addition, the court further erred in its grant of summary judgment because DESE's administrative decision to deny payment was in excess of its statutory authority.  We agree with Charter for reasons stated in Point One and reverse with instructions.

### Standard of Review

We review the grant of summary judgment *de novo*.  *Carroll v. Mo. Bd. of Prob. & Parole,* 113 S.W.3d 654, 656 (Mo. App. W.D. 2003).  "'[S]ummary judgment is appropriate when the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.'"  *Howard v. Mo. Dep't of Corr.,* 341 S.W.3d 857, 858 (Mo. App. W.D. 2011) (quoting *O.L. v. R.L.,* 62 S.W.3d 469, 473 (Mo. App. W.D. 2001)).  "The fact that it was a summary judgment in a

---

[6] The trial court stated multiple times on the record that its goal was to get this case in a posture so the Court of Appeals could finally decide the issues.

[7] Throughout Charter's brief, this section is cited incorrectly as 160.415(5).  We refer to the correct provision, section, 160.415.5, throughout this opinion.

6

writ of mandamus action does not affect our standard of review." *State ex rel. Outcom, Inc. v. City of Peculiar,* 350 S.W.3d 57, 62 (Mo. App. W.D. 2011) (internal quotation marks and citations omitted).

DESE's determination as to the amounts of the underpayments, as well as its determination that its *only* obligation was to calculate the amount of underpayments but not pay them, were administrative determinations based on DESE's interpretation of section 160.415.5. Because section 160.415.5 does not require a hearing, both of DESE's determinations are categorized as non-contested. *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 507 (Mo. banc 2009). Review of a non-contested case is governed by section 536.150. *Sch. Dist. of Kansas City v. Mo. Bd. of Fund Comm'rs*, 384 S.W.3d 238, 264 (Mo. App. W.D. 2012) (citing *City of Valley Park,* 273 S.W.3d at 508)). If judicial review is requested pursuant to section 536.150, the trial court is obliged to review *de novo* DESE's determination that it had no further duty to pay the amounts of the underpayments to Charter. *Id.* at 264 (citation omitted). On appeal in a non-contested case, we "review the judgment of the circuit court, not the decision of the administrative agency." *Id.* (citing *Mo. Nat. Educ. Ass'n v. Mo. State Bd. of Educ.,* 34 S.W.3d 266, 274 (Mo. App. W.D. 2000)). Thus, our review of the trial court's summary judgment in favor of the State "is essentially the same as the review for a court-tried case." *Id.* Accordingly, we review the trial court's judgment to see that it "rests on substantial evidence" and that it correctly declares and applies the law. *Id.*

Our standard of review is the same for both points.

**POINT I**

In Point One, Charter argues that the trial court erred in (1) refusing to direct DESE to pay Charter the sums that were underpaid because the court's judgment "erroneously declared and applied the law" and found that DESE did not have a duty under section 160.415.5 to make the payments to Charter, and (2) finding that mandamus did not lie to compel payment.

**Discussion**

**A. POSTURE OF THE CASE**

Implicit in its grant of summary judgment was the court's denial of Charter's request for judicial review of DESE's decision to refuse to pay the amounts of the underpayments to Charter. Consequently, DESE's administrative decision to refuse authorization of payment to Charter, which it based on its own interpretation of section 160.415.5, has not been reviewed to date. Because the trial court did not determine whether DESE had a legal duty to pay Charter, the trial court did not complete an administrative review under section 536.150. Section 536.150.1 requires that once a review proceeding is instigated, the court "shall render judgment." § 536.150.1. Since the issue of whether DESE has a statutory obligation to authorize payment to Charter is dispositive and we turn first to an analysis of section 160.415.5.

It is clear from its judgment that the trial court refused to make this determination because it concluded that "mandamus does not lie to compel the transfer of funds." This conclusion by the trial court is an error of law. "Since an execution may not be run against the property of a school district or other political sub-division of the State, the

8

only other procedure available to a judgment creditor to enable him to collect his judgment is for a court of competent jurisdiction to issue its writ of mandamus . . . ." *State ex rel. Hufft v. Knight*, 121 S.W.2d 762, 764 (Mo. App. S.D. 1938) (internal citations omitted); see also *Otte v. Mo. State Treasurer*, 141 S.W.3d 74, 76 n.3 (Mo. App. E.D. 2004) (the preferred means to collect money *clearly owed* by the state is mandamus).

## B. THE ARGUMENTS

The issue is whether the language in section 160.415.5 requires DESE is to make up for the underpayments in state aid to Charter by paying those amounts directly to Charter and subsequently withholding those same amounts from school aid funds it sends to the District. Charter's first request to DESE pursuant to section 160.415.5 was made in early 2007. The version of section 160.415.5 in effect at that time[8] provided:

> If a school district fails to make timely payments of any amount for which it is the disbursal agent, the state department of elementary and secondary education shall authorize payment to the charter school of the amount due pursuant to subsection 2 of this section and shall deduct the same amount from the next state school aid apportionment to the owing school district. If a charter school is paid more or less than the amounts due pursuant to this section, the amount of overpayment or underpayment shall be adjusted equally in the next twelve payments by the school district or the department of elementary and secondary education, as appropriate. Any dispute between the school district and a charter school as to the amount owing to the charter school shall be resolved by the department of elementary and secondary education, and the department's decision shall be the final administrative action for the purposes of review pursuant to chapter 536, RSMo. During the period of dispute, the department of elementary and secondary education shall make every administrative and statutory effort to allow the continued education of children in their current public charter school setting.

---

[8] The version of the statute in effect at the time of Charter's request was RSMo 2006 Supp., which went into effect on July 1, 2006.

Charter argues that the clear language of section 160.415.5 requires that DESE "shall authorize payment to the charter school of the amount due" and divert an equal amount of funds from the District as necessary.

The State argues that:

> [T]he question here is whether § 160.415.5 imposed a duty on DESE to do what [Charter] demands: to not just *ascertain* what the school district owed, but also to be the means of enforcement, taking money from State funds currently allocated to the District and diverting that money to [Charter]. The subsection does not impose that duty on DESE. *The question of payment is a matter to be resolved between [Charter] and the District.*

(Emphasis added).

## C. PRINCIPLES OF STATUTORY INTERPRETATION

The seminal rule of statutory construction is to ascertain the intent of the legislature from the language used and to consider the words used in their plain and ordinary meaning. *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 665 (Mo. banc 2010) (citation omitted). This court enforces statutes as they are written, not as they might have been written. *Id.* (citation omitted).

"The interpretation of a statute is a question of law." *Sch. Dist. of Kansas City*, 384 S.W.3d at 269 (citation omitted). "When the intent of a statute cannot be determined from the plain and ordinary meaning of the words used and the statute is ambiguous, it should be given a reasonable reading and construed consistent with the legislature's purpose in enacting it." *State ex rel. Sch. Dist. of Kansas City v. Williamson*, 141 S.W.3d 418, 424 (Mo. App. W.D. 2004) (citing *Blue Cross & Blue Shield of Kansas City v. Nixon,* 26 S.W.3d 218, 228 (Mo. App. W.D. 2000)). "In determining the meaning of a

10

word in a statute, the Court will not look at any one portion of the statute in isolation." *Union Elec. Co. v. Dir. of Revenue,* 425 S.W.3d 118, 122 (Mo. banc 2014). "Rather, it will look at the word's usage in the context of the entire statute to determine its plain meaning." *Id.*

"A court will look beyond the plain meaning of the statute only when the language is ambiguous or would lead to an absurd or illogical result." *State ex rel. Valentine v. Orr*, 366 S.W.3d 534, 540 (Mo. banc 2012) (citation omitted).

## D. APPLICATION OF THIS STATUTE

The statute at issue encompasses the present situation. The plain and ordinary language of section 160.415.5 is applicable to a case where a charter school is overpaid or underpaid state aid by a school district that is acting as the State's disbursal agent. Charter argues that DESE has a duty to determine the amount of the underpayment and to pay that amount to Charter. DESE argues that its obligation is limited to a "determination" of the amount of the underpayment, without actually "resolving" the matter by redirecting future payments of state aid from the District to Charter. DESE did in fact determine and verify that Charter was underpaid by the District for multiple years. The issue before this court is what the language of the statute means when it obligates DESE to "resolve" the matter of the underpayment.

Section 160.415.5 specifically addresses how charter schools are to receive their funding. The statute governs two scenarios that were anticipated in requiring public school districts to calculate and disburse a part of the state aid they receive to the charter

11

schools within their districts.  The first sentence of the statute addresses if and when a district's payments to the charter schools are late:

> If a school district fails to make timely payments of any amount for which it is the disbursal agent, the state department of elementary and secondary education **shall authorize payment to the charter school of the amount due** pursuant to subsection 2 of this section **and shall deduct the same amount from the next state school aid apportionment to the owing school district**.

Cleary, based on plain and ordinary language, when the school district is the DESE's disbursal agent of aid to the charter schools, and is late in making payments to the charter schools, DESE steps in and "authorizes payment" directly to the charter school and "deducts" that same amount from its payment to the school district.  It effectively steps in and pays Charter in lieu of the District.  In this matter, these underpayments are now between seven and ten years late.

The second sentence of the statute addresses if and when the amount of state aid the district calculates and sends to a charter school is more or less than what is due:

> **If a charter school is paid more or less than the amounts due** pursuant to this section**, the amount of overpayment or underpayment shall be adjusted** equally in the next twelve payments **by the school district or [DESE], as appropriate.**

This sentence mandates that the amounts "shall be adjusted" by either DESE or the district, whichever is "appropriate."  In this case, because Charter is now an LEA, the District no longer acts as the disbursal agent for state aid to Charter.  At this point, the State disburses aid directly to the District for its share of state aid and directly to Charter for its share of state aid.  Thus, there are no payments from the District to Charter from which to adjust the prior underpayment.

12

"Where a charter school is not an LEA, the district remains a disbursal agent."

*Sch. Dist. of Kansas City v. State of Mo.*, 317 S.W.3d 599, 603, n.2 (Mo. banc 2010). The Charter Schools Act, by its terms, "*does not provide for any such direct transfer of funds [from a district] to LEAs*." *Id.* at 605 (emphasis added). If the charter school is an LEA within the district, then DESE acts as its own disbursal agent. If a charter school's aid is paid to the district as a pass-through to the charter school, the district acts as the DESE's disbursal agent to the charter school. Therefore, once a charter becomes an LEA, DESE is the disbursal agent for the aid payments to both the District and Charter.[9] Consequently, here the "as appropriate" language refers to whichever entity is responsible for disbursing funds, i.e. DESE.

The third sentence of the statute expressly denotes DESE as the final arbiter of a dispute between the district and a charter school as to the amount of state aid disbursed to each:

> **Any dispute between the school district and a charter school as to the amount owing to the charter school shall be resolved by the department of elementary and secondary education, and the department's decision shall be the final administrative action** for the purposes of review pursuant to chapter 536, RSMo. During the period of dispute, the department of elementary and secondary education shall make every administrative and statutory effort to allow the continued education of children in their current public charter school setting.

(Emphasis added).

---

[9] Section 160.415.4 states in part: If a charter school declares itself as a LEA, the department of elementary and secondary education shall, upon notice of the declaration, reduce the payment made to the school district by the amount specified in this Subsection and *pay directly to the charter school* the annual amount reduced from the school district's payment. (Emphasis added.)

13

It is DESE that is to "resolve" the dispute between the district and its charter schools pursuant to the statute. As noted above, DESE argues that "resolving" the issue cannot be interpreted to mean that DESE "shall deduct the same amount from the next state school aid apportionment to the owing school district." It argues that the authorization language is found only in the sentence concerning when payments to a charter school are *untimely*.[10]

But when we read the three sentences of the statute together in context, as we are required to do, it becomes plain that the overall purpose of the statute is to ensure that charter schools are treated equitably in the distribution of state aid to provide for the children that they serve. The statute plainly addresses what should happen if charter schools do not receive the state aid to which they are entitled.[11] This is precisely the factual scenario at issue, as the State has stipulated.

The role of DESE in disbursing state aid to both school districts and to LEA charter schools is further evident in our Supreme Court's holding in *School District of Kansas City*, 317 S.W.3d 599. There, the issue was whether funding for the Charter Schools Act violated section 11(g) of the Missouri Constitution. *Id.* at 601. Of import was the Court's view of the State's role in disbursing aid to school districts, charter schools and LEA charter schools. The clear role of the State was to be the disburser and final arbiter of state funds; this role was not given to the school districts. Though in the

---

[10] While it is arguable that the payments in this case are late by as much as ten years, neither party argues that the provision of the statute regarding "timely" payment should be applied in this matter and therefore we do not decide the application of that provision herein.

[11] Other statutes, such as sections 163.031 and 163.091, address what should happen if a school district, as opposed to a charter school, does not receive the correct amount of state aid from DESE.

14

context of a constitutional challenge, our Supreme Court confirmed that the role of the State was to "**determine the amount**" of state aid districts, charter schools and LEAs were to receive, and "**to send**" it. *Id.* at 606.

Moreover, because sections relating to the same issue should be read to "harmonize" with one another, we further rely on the preceding section, 160.415.4, in reaching this conclusion. "Provisions of an entire legislative act should be construed together and, if reasonably possible, all of its provisions must be harmonized." *Nance v. Maxon Elec., Inc.*, 395 S.W.3d 527, 532 (Mo. App. W.D. 2012) (citation omitted). As noted *supra* at note ten, section 160.415.4 states that:

> If a charter school declares itself as a local education agency, the department of elementary and secondary education shall, upon notice of the declaration, reduce the payment made to the school district by the amount specified in this subsection and *pay directly to the charter school the annual amount reduced from the school district's payment*.

(Emphasis added).

We find it persuasive that, after designating in this subsection that DESE is to be the disbursal agent to LEA charter schools, the following subsection includes a directive that an underpayment "shall be adjusted . . . by the school district *or* [DESE], as appropriate." The fact that the Legislature included a reference to the "appropriate" disbursal agent acknowledges that it had just created an option in disbursal agents in the previous provision, section 160.415.4, depending on the charter school's status. "It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect." *Lake v. Levy*, 390 S.W.3d 885, 892 (Mo. App. W.D. 2013)

15

(citations omitted). "Conversely, it will be presumed that the legislature did not insert verbiage or superfluous language in a statute." *Id.*

In this matter, it has been determined by DESE that there was an underpayment, which triggers the application of the statute. In construing section 160.415.5, it is clear that DESE has a duty to "resolve" the dispute at issue which necessarily includes its obligations under the statute to pay Charter what DESE finally determined to be owed and to withhold a corresponding amount from future disbursements of aid to the District. We base this on the fact that section 160.415.5 requires the appropriate disbursal agent for the charter school to reduce payment to the district.

In the instant case, the District is no longer the disbursal agent for Charter because Charter is an LEA. Therefore, DESE is the disbursal agent for all funds LEAs receive, be they normal amounts or amounts owing. The inclusion of a choice of disbursal agents in section 160.415.5 requires us to conclude that the legislature intended this section regarding the resolution of underage or overages to apply to LEAs as well; otherwise there would be no purpose in acknowledging a choice in disbursal agents. Thus, section 160.415.5 applies to amounts owed to LEAs and mandates that they be paid by DESE.

## E. TRIAL COURT'S GRANT OF SUMMARY JUDGMENT

As noted above, "'summary judgment is appropriate when the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.'" *Howard,* 341 S.W.3d at 858 (citation omitted). The burden was on the State to first prove that no genuine issue of material fact existed. Here we have a mixed issue of law and facts. While the parties have stipulated as to how

16

much was paid each year by the District to Charter and there is a legal formula through which the proper amounts may be calculated, there are factual variables in determining the calculation of the amount Charter was entitled to based on numbers of students enrolled, actual student attendance, etc. Because the District maintains that it paid Charter what it was statutorily required to pay them during school years 2003-2007 and has never agreed with DESE that underpayments occurred, there was a material fact in dispute at to whether Charter was underpaid and if so by how much. The record before us is insufficient for us to make that determination. As noted *supra*, the trial court entered summary judgment based on the improper legal conclusion that "mandamus does not lie to compel the transfer of funds," thus reasoning that a determination of the factual issue as to the amount of any underpayment was unnecessary. This improper legal conclusion requires reversal of this matter.

The burden was also on the State to prove the second prong; that is, that the State was entitled to judgment as a matter of law. But as pointed out above, section 160.415.5 does in fact require DESE to authorize payment to Charter in the event of an underpayment and to subsequently withhold the amount of the underpayment in equal installments from the next twelve payments made to the District. Thus, to the extent the trial court found that the State had no duty to Charter, that finding was also in error and the entry of summary judgment on that basis was erroneous. The trial court misapplied the law and granted summary judgment to the State in error.

For all of the above reasons, Point One is granted.

17

**F. PROCEEDINGS ON REMAND**

Here we are after more than five years of litigation and two trips to this court. It is time for this case to be placed on the proper tracks for final resolution. Rule 84.14[12] directs us to dispose finally of this case as justice requires. In this case justice requires that we provide specific instructions to the trial court as to how to proceed on remand.

The District contends that mandamus is not appropriate in this matter because the amounts of the underpayments have not been finally determined and "[f]or mandamus to be appropriate, there must exist a clear, unconditional legal right in the relator and a corresponding present, imperative, unconditional duty on respondent." *State ex rel. Otte v. Mo. State Treasurer*, 182 S.W.3d 638, 641 (Mo. App. E.D. 2005). The District argues that the amounts of the underpayments are not final because it still has the right to have the amounts judicially reviewed and that it may file for judicial review of an uncontested case at any "reasonable time." *Wooldridge v. Greene Cnty.,* 198 S.W.3d 676, 683 (Mo. App. S.D. 2006). At oral argument, the District made it clear that it still contests the accuracy of DESE's determination of the underpayments for each year, but that it has not yet filed any action to have those amounts reviewed. On the other hand, Charter is not aggrieved by the determination of the amounts of underpayments by DESE and has accepted them and stipulated that they are accurate. Therefore, Charter has no grounds to bring an action for judicial review of the amounts as determined by DESE.

---

[12] All rule references are to Missouri Supreme Court Rules (2014).

This puts Charter in a hopeless "Catch-22."[13] *See Dore & Associates Contracting, Inc. v. Mo. Dept. of Labor & Indus. Relations Comm'n,* 810 S.W.2d 72, 76 (Mo. App. W.D. 1990). The District, by refusing to exercise its right to bring an action for judicial review of the amounts, has put itself in the position to argue before the trial court and this court that the amounts are not final and therefore not subject to mandamus. The trial court, in its efforts to avoid reaching the legal issues raised and have them be finally determined by this court, has refused to address Charter's multiple attempts to have a final determination made that the amounts of underpayments determined by DESE are accurate or to have those numbers finally adjudicated.

DESE reached its determination of the underpayment for the final three fiscal years in question in October of 2010, almost four years ago. DESE's determination of the underpayment for the FY 2003-2004 was reached in August of 2013. The District has a "reasonable time" under the law to bring an action challenging the accuracy of these numbers. That "reasonable time" is limited by the application of the doctrine of laches. *Hagely v. Bd. of Educ. of Webster Groves Sch. Dist.,* 841 S.W.2d 663, 669 (Mo. banc 1992).

> Laches is the neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. There is no fixed period within which a person must assert his claim or be barred by laches. Mere delay does not of itself constitute laches; the delay involved must work to the disadvantage and prejudice of the defendant. Where no one has been harmed in any legal sense, and the situation has not materially changed, the delay is not fatal.

---

[13] The phrase "Catch-22" originated from the satirical novel of the same name by Joseph Heller published in 1961 by Simon & Schuster.

19

*Id.* at 669-70 internal citations and quotation marks omitted).

The application of laches is a question of fact that must be determined by the trial court based on the evidence presented by the parties. *Id.* at 670. Therefore it will be up to the trial court to determine on remand if the District can still bring a challenge to the amount of the underpayments or if laches now bars such a challenge.

## POINT II

Because we find error in the court's grant of summary judgment under Point One and can decide this case on that alone, we need not reach the issues raised in Point Two.

## CONCLUSION

We therefore reverse and remand to the trial court with instructions as outlined herein.

On remand, the District shall have **thirty** days from the date of our mandate to file, in this case, any objections that it may have as to the accuracy of the amounts of the underpayments as determined by DESE:

> FY 2003–2004 = $693,526.27,
> FY 2004–2005 = $562,710.62,
> FY 2005–2006 = $623,716.13, and
> FY 2006–2007 = $1,501,142.44.

The failure to file an objection to any of the amounts shall waive any future challenge by the District as to any of these amounts. If an objection is filed by the District, it shall be the obligation of the trial court to first hold a hearing to determine whether the District has waived its right to challenge the amounts of the underpayments for any or all years under the doctrine of laches. If the trial court determines that laches

20

does not apply and the challenge to the amounts is timely, then the trial court shall proceed with an appropriate administrative review of the amounts as determined by DESE and make a final determination as to the amount that was underpaid, if any, for each fiscal year in question. If the trial court determines that laches does apply and the District's challenge is thereby barred, the amounts of underpayments as determined by DESE shall be deemed final. The trial court shall finally determine the amounts of any underpayments for each of the fiscal years in question under the procedures set forth above.

Second, as to the final determination of underpayments, the trial court shall issue a writ of mandamus ordering DESE to perform its statutory obligations pursuant to section 160.415.5; that is, DESE shall pay Charter the total amount of all of the underpayments together with statutory interest, in twelve equal monthly installments and simultaneously reduce the monthly state aid payments to the District in the same amounts. The payments to Charter shall begin with the first state aid payment that DESE disburses to the District following the final judgment in this matter.

We reverse and remand with the above instructions to the trial court to proceed on this matter consistent with our ruling today.

_____
Gary D. Witt, Judge

All concur

21