The CITY OF VALLEY PARK,
Missouri, Respondent,

v.

Matthew ARMSTRONG,
et al., Appellants.

No. SC 89186.

Supreme Court of Missouri,
En Banc.

Jan. 13, 2009.

Rehearing Denied Jan. 30, 2009.

David T. Hamilton, Elizabeth M. Chostner, Hazelwood & Weber LLC, St. Charles, for Appellants.

Eric M. Martin, Chesterfield, for Respondent.

## Overview

PER CURIAM.[1]

In 2004, Valley Park wanted to annex Peerless Park. It submitted a proposal to do so to the St. Louis County boundary commission. After a public hearing on the proposal, Valley Park submitted an amended proposal. The boundary commission rejected the amended proposal. Valley Park successfully sought judicial review. The circuit court determined that the boundary commission's action was arbitrary, capricious and unreasonable. As a result, the circuit court remanded the annexation proposal to the boundary commission for referral to the county board of election commissioners for an election on the annexation proposal to be held in Valley Park and Peerless Park.

The boundary commission appeals. The parties dispute whether the boundary commission's action is reviewed as a contested case or a noncontested case. This case is a noncontested case. Applying the review accorded noncontested cases, the circuit court's judgment is affirmed.

### Classifying a case as contested or noncontested

■ The classification of a case as "contested" or "noncontested" is determined as a matter of law. *Cade v. State,* 990 S.W.2d 32, 36 (Mo.App.1999). As noted in *Furlong Companies, Inc. v. City of Kansas City,* 189 S.W.3d 157, 165 (Mo. banc 2006):

Contested case review is controlled by sections 536.100 to 536.140. Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law. *Hagely v. Board of Education of the Webster Groves School District,* 841 S.W.2d 663, 668 (Mo. banc 1992). The review of a contested case is a review by the trial court of the record created before the administrative body. Section 536.140. The trial court's decision upon such review is appealable, but the appellate court also looks back to the record created before the administrative body. *City of Cabool v. Missouri State Board of Mediation,* 689 S.W.2d 51, 53 (Mo. banc 1985).

Non-contested cases do not require formal proceedings or hearings before the administrative body. *Farmer's Bank of Antonia v. Kostman,* 577 S.W.2d 915, 921 (Mo.App.1979). As such, there is no record required for review. *Phipps v. School District of Kansas City,* 645 S.W.2d 91, 94–95 (Mo. App.1982). In the review of a non-contested decision, the circuit court does not review the administrative record, but hears evidence, determines facts, and adjudges the validity of the agency decision. *Id.* Under the procedures of section 536.150, the circuit court conducts such a hearing as an original action. *Id.* at 96; section 536.150.1.

In either a contested or a non-contested case the private litigant is entitled to challenge the governmental agency's de-

---

1. The Court of Appeals, Eastern District, transferred this case to this Court by an opinion authored by the Honorable Sherri B. Sul- livan. Portions of that opinion are used without further attribution. This Court has jurisdiction. *Mo. Const. art. V, sec. 10.*

cision. The difference is simply that in a contested case the private litigant must try his or her case before the agency, and judicial review is on the record of that administrative trial, whereas in a non-contested case the private litigant tries his or her case to the court. Depending upon the circumstances, this difference may result in procedural advantages or disadvantages to the parties, but in either situation, the litigant is entitled to develop an evidentiary record in one forum or another.

### This is a noncontested case

 The key to the classification of a case as contested or noncontested is the requirement of a hearing. *Cade* at 36. The term "hearing," as used in section 536.010(2)[2] means a proceeding at which a "measure of procedural formality" is followed. *Hagely v. Board of Educ. of Webster Groves School Dist.,* 841 S.W.2d 663, 668 (Mo. banc 1992). Procedural formalities in contested cases generally include: notice of the issues (section 536.067); oral evidence taken upon oath or affirmation and the cross-examination of witnesses (section 536.070); the making of a record (section 536.070); adherence to evidentiary rules (section 536.070); and written decisions including findings of fact and conclusions of law (section 536.090). *Id.*

In determining if a hearing comports with these formalities, the statute requiring the hearing is examined. In this case, section 72.403 sets out the public hearing requirement:

2. When a boundary change proposal has been submitted to the commission, the commission shall, within twenty-one days of receipt of such proposal, publish notice of such proposal and the date of the public hearing thereon in at least one newspaper of general circulation qualified to publish legal notices. Within twenty-one days of receipt of such proposal, the commission shall also mail written notification of such proposal and public hearing date to the county clerk, and to the city or village clerk of each municipality or village, and to any other political subdivision which, in the opinion of the commission, is materially affected by the proposal. The costs of publication and notification shall be borne by the proposing agent. The commission shall hold such public hearing concerning the proposal not less than fourteen nor more than sixty days after such publication and notification are complete. At such public hearing, the county, the proposing agent and affected municipalities shall be parties, and any other interested person, corporation, or political subdivision may also present evidence regarding the proposed boundary change.

Consistent with the statutory requirements, a public hearing was held. At the hearing, however, Valley Park was limited to a 15–minute presentation. Witnesses did not give testimony upon oath or affirmation. There was no cross-examination of witnesses. Rather, interested parties were allowed to submit letters regarding the proposal for 21 days following the public hearing. There was no formal adherence to procedural rules of evidence.

Because section 72.403 does not provide for an adjudicatory hearing where Valley Park was permitted to try its case before the boundary commission and develop the necessary evidentiary record, the case is not a contested case. *Furlong* at 165.

---

**2.** All statutory references are to RSMo 2000. The boundary commission law encompasses sections 72.400 to 72.423.

## Standard of review for noncontested cases

 The standard of judicial review of noncontested cases is governed by section 536.150. *THF Chesterfield North Development, L.L.C. v. City of Chesterfield,* 106 S.W.3d 13, 18 (Mo.App.2003). The circuit court does not review the record for competent and substantial evidence, but instead conducts a *de novo* review in which it hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion. *Id.* The circuit court does not defer to facts found or credibility assessed by the agency and need not conform doubtful evidence to the agency's decision. *Cade* at 37. The circuit court in a noncontested case acts to determine the evidence and give judgment from that evidence. *Id.*

## The boundary commission statutes

The General Assembly created the boundary commission to review boundary changes in St. Louis County to provide structure and oversight for burgeoning annexation activities in the county. The boundary commission is to review all proposed annexations within St. Louis County and approve or disapprove them as being in the best interests or not in the best interests of the proposing entity, the area to be annexed, and St. Louis County. See section 72.403. The statute sets out the factors to be considered by the boundary commission in making its determinations. *Id.* If the boundary commission approves the proposal, then the constituents in the affected areas vote on the proposal. *Id.* If the boundary commission rejects the proposal, then the proposal is not submitted to the voters.

In reviewing any proposed boundary change, the boundary commission shall approve the proposal if it finds that the boundary change will be in the best interests of the municipality and the unincorporated territory affected by the proposal and the areas of the county next to such proposed boundary. Section 72.403. In making its determination, the boundary commission shall consider the following factors:

(1) The impact, including but not limited to the impact on the tax base or on the ability to raise revenue, of such proposal on:

 (a) The area subject to the proposed boundary change and its residents;

 (b) The existing municipality or municipalities, if any, proposing the boundary change and the residents thereof;

 (c) Adjoining areas not involved in the boundary change and the residents thereof; and

 (d) The entire geographic area of the county and its residents;

(2) A legal description of the area to be annexed, incorporated, consolidated, or subject to the transfer of jurisdiction;

(3) The creation of logical and reasonable municipal boundaries in the county, and for such purpose the boundary commission shall have the ability to make additions, deletions and modifications that address legal boundaries, technical or service delivery problems or boundaries that overlap those of other proposals; however, such additions, deletions and modifications shall not make substantial changes to any proposed boundary petition;

(4) The present level of major services provided by the municipality or other provider, provided to the unincorporated area by the county, and proposed to be provided by the annexing municipality or munic-

ipality to be incorporated or consolidated, including, but not limited to, police protection, fire protection, water and sewer systems, street maintenance, utility agreements, parks, recreation, and refuse collections;

(5) A proposed time schedule whereby the municipality or proposed municipality plans to provide such services to the residents of the area to be annexed, incorporated or consolidated within three years from the date the municipal boundary change is to become effective;

(6) The current tax rates of the areas subject to the proposal;

(7) What sources of revenue other than property tax are collected or are proposed to be collected by the municipality or proposed municipality;

(8) The extraordinary effect the boundary change will have on the distribution of tax resources in the county;

(9) How the municipality or proposed municipality proposes to zone any area not presently incorporated;

(10) The compactness of the area subject to such proposal;

(11) When the proposed boundary change shall become effective.

Section 72.403.3(1) to (11).

### Applying the statutory factors to the circuit court findings

■ After considering the relevant factors, the circuit court made findings that, based on the evidence, including expert testimony submitted to it by Valley Park and from the record created by the boundary commission at the hearing before it, the proposed annexation was in the best interests of Valley Park, Peerless Park, contingent unincorporated areas and contingent areas of St. Louis County, because: (1) it would not have a substantial impact on the tax base or the ability to raise revenue on any of the involved areas; (2) it would enhance or provide new, desirable services to Peerless Park at a minimal cost to Peerless Park's residents; (3) the proposed boundaries represent a logical progression of Valley Park's current boundaries and do not create pockets of unincorporated areas—the area, therefore, is compact and legally contiguous to Valley Park; (4) a total one percent increase in sales tax to be collected by Valley Park is not an unreasonable burden on the area; and (5) the Meramec River is not an impediment to Valley Park providing immediate services to Peerless Park. In light of its findings that the annexation proposal was in the best interests of the affected parties, the circuit court concluded that the boundary commission's decision denying the proposal was arbitrary, capricious and unreasonable.

The circuit court's findings and conclusions are supported by the evidence in the record. The evidence demonstrates that if the proposal went into effect, the sales tax for Peerless Park would increase from 6.075% to 7.075%. Real property or personal property taxes would increase by $0.54 per $100 assessed valuation, or approximately $80 annually to each of the 24 condominium residents. Valley Park levies the same five percent gross receipt utility tax rate as St. Louis County. These increases do not create an unreasonable burden on Peerless Park, especially in light of the fact that Peerless Park will receive new, sought-after services, such as maintenance of the parking lot and streets of the Eagle Rock Condominium complex; maintenance and repair of a problematic rock wall abutting the condominium complex, which houses a significant portion of the residents of Peerless Park; and the installation of sanitary sewer lines and lift stations.

The circuit court's finding that the estimated $122,292 annual revenue loss to St. Louis County is insignificant is supported by the evidence, in light of the fact that it is approximately 0.03 percent of St. Louis County's 2004 annual budget,[3] which was in excess of $439 million.

The circuit court's finding that the area proposed to be annexed is legally contiguous to Valley Park, as required by statute,[4] is undisputed. The circuit court's finding that the proposed boundary line does not create pockets of unincorporated areas and, therefore, creates an area that is compact is supported by the record. No facts in the record contravene the circuit court's finding that the proposed boundary is a logical progression of Valley Park's current boundary lines. No evidence contradicts the circuit court's determination that the Meramec River, which runs perpendicular to the proposed extension of Valley Park's boundary lines, presents no obstacle to Valley Park's provision of services to Peerless Park.

The few subdivisions that would be split by the new boundary lines are not traditional subdivisions with restrictions and indentures, but, rather are large lots consisting of industrial and commercial uses. The area proposed to be annexed is mostly industrial and commercial, with a population of approximately 50 people, inhabiting 27 dwelling units, consisting of 24 condominium units and only three single-family residences. A petition with 26 signatures from residents of the Eagle Rock Condominium complex requests the boundary

commission to allow the proposed annexation to be approved for their vote.

The circuit court's judgment is supported by substantial evidence.

### Conclusion

The judgment is affirmed.

STITH, C.J., PRICE, TEITELMAN, RUSSELL, WOLFF and BRECKENRIDGE, JJ., and LEWIS, Sp.J., concur. FISCHER, J. not participating.

---

3. St. Louis County's budget for fiscal year 2004 was presented at the commission's 2004 hearing on the proposal.

4. Section 72.400(2) defines "boundary change" as "any annexation, consolidation, incorporation, transfer of jurisdiction between municipalities or between a municipality and the county, or combination thereof, which, if approved, would result in a munici-

pality composed of contiguous territory", and section 72.400(4) defines "contiguousness" as "territory proposed for annexation in which at least fifteen percent of its boundary is adjacent to the municipality which is proposing the annexation...." In the instant case, the area proposed to be annexed is 25 percent contiguous to Valley Park.