PRESIDENT RIVERBOAT CASINO–
MISSOURI, INC., and Pinnacle En-
tertainment, Inc., Appellants,

v.

MISSOURI GAMING COMMISSION,
Respondent.

No. WD 71525.

Missouri Court of Appeals,
Western District.

March 2, 2010.

Jerome D. Riffel, for Appellants.

Christopher W. Hinckley, for Respon-
dent.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA L. MARTIN, Judge.

## VICTOR C. HOWARD, Judge.

President Riverboat Casino–Missouri, Inc. and Pinnacle Entertainment, Inc. (collectively "Pinnacle") seek judicial review of Resolution 09–069 of the Missouri Gaming Commission ("Commission"). Pinnacle has a Class B license to operate the President Riverboat Casino at a specified location aboard the excursion gambling boat, the Admiral. In December 2008, its license was renewed until October 31, 2011. However, the hull certification of the Admiral will expire on July 19, 2010. Thus, in January 2009, the Commission initiated communications with Pinnacle regarding Pinnacle's intentions and plans for the future of the casino. Over the next several months, Pinnacle informed the Commission that it was considering repairing the Admiral, replacing the boat, or relocating the boat to a higher point on the river. In July 2009, the Commission ordered Pinnacle to appear before it on July 28, 2009, for a hearing to present Pinnacle's formal proposals regarding the future of the President Casino and its Commission issued Class B license.

The July 28th hearing was held pursuant to section 313.807.1, RSMo Cum.Supp. 2009, which provides that the Commission may reopen licensing hearings at any time. The Commission's executive director commented at the beginning of the hearing that a licensee has an ongoing responsibility to demonstrate suitability throughout the period of licensure. Plans, exhibits, and testimony were then presented on Pinnacle's proposals. Hearing memorandum and briefs were also presented to the Commission.

Thereafter, on August 25, 2009, Pinnacle filed a request for amendment to riverboat gaming license requesting approval to replace the Admiral with another vessel. The next day, on August 26, 2009, the Commission issued Resolution 09–069 addressing the problem of the expiration of the Admiral's hull certification. In the Resolution, the Commission resolved that repair of the Admiral was not practicable. It further resolved that Pinnacle cannot lawfully relocate the Admiral, or any other barge, from its present site and that replacement of the Admiral with another barge at its present site would require a new license. It concluded by rejecting all plans and proposals submitted by Pinnacle regarding repair, replacement, or relocation of the Admiral.

Pinnacle filed its petition for judicial review in this court on September 24, 2009. The Commission subsequently filed its motion to dismiss arguing that the matter may not be brought before this court at this time because it is a noncontested case and Pinnacle's prayer for relief is one only properly granted in an action for declaratory judgment. The Commission's motion to dismiss was taken with the case and is now denied. In its points on appeal, Pinnacle challenges the Resolution procedurally and substantively arguing that Pinnacle's constitutional rights to procedural due process were violated, the Commission failed to follow its own procedural regulations, and the Commission exceeded its statutory authority.

■ Under section 313.840.2, RSMo Cum.Supp.2009, judicial review of all commission decisions relating to excursion gambling boat operations shall be directly to this court. The statute, however, only pertains to contested cases. *Columbia Sussex Corp. v. Mo. Gaming Comm'n*, 197 S.W.3d 137, 146 n. 2 (Mo.App. W.D.2006). Thus, under section 313.840.2, this court

has jurisdiction only in contested cases decided by the gaming commission.

■■■■ "The classification of a case as 'contested' or 'noncontested' is determined as a matter of law." *City of Valley Park v. Armstrong,* 273 S.W.3d 504, 506 (Mo. banc 2009). A contested case is defined in section 536.010(4), RSMo Cum.Supp.2009, as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." On the other hand, a noncontested case does not require a formal proceeding or hearing before the administrative agency. *Armstrong,* 273 S.W.3d at 506. The relevant issue under the contested case definition is whether the agency was required by statute, ordinance, or constitutional provision to hold a hearing. *Painter v. Mo. Comm'n on Human Rights,* 251 S.W.3d 408, 410 (Mo.App. W.D.2008). *See also Armstrong,* 273 S.W.3d at 507. "The question 'is not whether a hearing was actually conducted, but whether one was required by law.'" *Painter,* 251 S.W.3d at 411 (quoting *BBCB, LLC v. City of Independence,* 201 S.W.3d 520, 527 (Mo.App. W.D.2006)). *See also State ex rel. Yarber v. McHenry,* 915 S.W.2d 325, 328 (Mo. banc 1995).

■■■ Section 313.805, RSMo Cum.Supp. 2009, assigns the Commission responsibility to supervise all gambling operations. Among its supervisory powers are the powers to investigate applicants and determine their priority and eligibility for a license, section 313.805(1), and to assess any appropriate administrative penalty against a licensee including suspension, revocation, and monetary penalties, section 313.805(6). Commission rules specifically authorize hearings for actions regarding suitability and discipline, among others. 11 CSR 45–13.045, 11 CSR 45–13.050. Section 313.807.1, RSMo Cum.Supp.2009, provides that "the commission may reopen

licensing hearings at any time." Finally, any governmental taking of a protected property interest implicates the constitutional right to procedural due process and, thus, requires notice and an opportunity to be heard. *McHenry,* 915 S.W.2d at 328.

■■■ In this case, it is difficult to determine whether a hearing was required by law because it is unclear what the Resolution attempts to accomplish. The Commission asserts that the Resolution simply stated the Commission's opinion regarding what the law is and, thus, no hearing was required by law; the case was a noncontested case; and this court does not have jurisdiction to review the Resolution. On the other hand, Pinnacle contends that the case was contested because the Resolution resulted in a de facto revocation of its license, which required a hearing, and that it was not afforded proper process. The record is confusing regarding the purpose and nature of the proceedings and of the Resolution itself. The proceedings had attributes of fact-finding but also of specific action against Pinnacle's license that, the Commission acknowledges, would require proper process. For example, at the July 28th hearing, by its own words, the Commission appears to "reopen" Pinnacle's gaming license, interjecting the issue of Pinnacle's "suitability." Thereafter, Pinnacle filed a request to amend its gaming license, which was effectively and summarily disposed of the next day in the Resolution. Yet the Commission asserts in its Brief that Pinnacle is free to file a request to amend its gaming license. Further, the Resolution specifically references the July 28th hearing and appears to make findings of a fact and conclusions of law which affect Pinnacle's gaming license. While neither party fully convinces this court of its position, the confusion regarding what the Resolution attempts to accomplish raises concern that this was a

contested case without sufficient process. Under these circumstances, therefore, the Resolution is reversed, and the case is remanded to the Commission for further proceedings appropriate for whatever action affecting Pinnacle's license and/or hull the Commission decides to take.

All concur.