# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1127

_____

Terry Draper

*Plaintiff - Appellant*

v.

City of Festus, Missouri; City Council of Festus, Missouri; Mayor Michael Cage;
Timothy Montgomery; Gary Underwood; Paul Schaffer; Kathy Murphy; Kevin
Dennis; Bobby Venz; Jim Tinnin, in their individual and official capacities

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 15, 2015
Filed: April 6, 2015

_____

Before WOLLMAN, SMITH, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The City Council of Festus, Missouri (the City Council), terminated Terry
Draper from his position as City Administrator of the City of Festus (Festus) roughly
six months into a three-year employment contract. He brought suit against Festus, the

City Council, the individual members of the City Council, and the mayor[1] (collectively, the City), alleging a violation of his Fourteenth Amendment procedural- and substantive-due-process rights under 42 U.S.C. § 1983, a § 1983 conspiracy claim, breach of contract, and other claims not at issue on appeal. He also sought judicial review of the City Council's decision to terminate him under the Missouri Administrative Procedure Act (MAPA), Mo. Rev. Stat. §§ 536.010-536.160. The district court[2] granted summary judgment to the City on Draper's aforementioned claims and upheld the City Council's decision. We affirm.

## I. Background

We present the facts viewed in the light most favorable to Draper. See Jetton v. McDonnell Douglas Corp., 121 F.3d 423, 424 (8th Cir. 1997). Draper was hired as City Administrator in September 2009. He entered into a three-year employment contract with Festus on October 27, 2010, which provided for six months' severance pay if he was terminated without cause. If he was terminated with cause—defined as misfeasance, malfeasance, or an act constituting gross dereliction of duty—he was not entitled to any severance pay.

In January 2011, Timothy Montgomery began campaigning for a seat on the City Council. His campaign was highly critical of Draper's performance. Montgomery was elected to the City Council in April 2011. Shortly thereafter, Draper received notice from the City that he was suspended with pay pending a City Council

---

[1]The individual defendants—Mayor Michael Cage and City Council members Timothy Montgomery, Gary Underwood, Paul Schaffer, Kathy Murphy, Kevin Dennis, Bobby Venz, and Jim Tinnin—were sued in their individual and official capacities.

[2]The Honorable Thomas C. Mummert, III, Chief Magistrate Judge, United States District Court for the Eastern District of Missouri, to whom the case was submitted by consent of the parties under 28 U.S.C. § 636(c).

meeting to discuss several allegations regarding his job performance. He responded in writing, and after the City Council meeting, he was terminated. Thereafter, he requested a public hearing before the City Council, which was scheduled for June 27, 2011, at 1:00 p.m. On June 2, 2011, six days after receiving notice of the hearing, Draper's attorney notified the City that he had a conflict and asked that the hearing be postponed until 4:00 p.m. on June 27. The City refused to reschedule the hearing. On June 13, 2011, Draper's attorney again requested a continuance, which the City denied the next day. The hearing took place at 1:00 p.m. on June 27, 2011, as scheduled. Neither Draper nor his attorney was present. Draper explained in his deposition that he did not appear at the hearing "[b]ecause [he] felt that it was very important for [him] to be represented by legal counsel."

During the hearing, several witnesses testified regarding decisions Draper had made during his tenure as City Administrator. Specifically, evidence was presented regarding Draper's decision to recommend a certain engineering firm to complete a road project and act as City Engineer; his authorization of more than $50,000 in repairs to a heating system and more than $2000 for the purchase of new windows; his memorandum purporting to end a bonus program; and his request for reimbursement of funds that were later charged to Festus.

Two witnesses testified about Draper's decision in November 2010 to recommend a certain engineering firm for a road project, and one witness testified about Draper's decision in April 2011 to recommend that same firm be City Engineer. Bob Stephens, a consultant for Festus, testified that he had evaluated some ten engineering firms for the road project and had made a recommendation based on various factors. Stephens testified that the firm Draper ultimately recommended for the project had been ranked third based on Stephens's evaluation. Kristin Gendron, an intern for Festus at the time of the engineering evaluation, testified that Draper had asked her to create a spreadsheet based on Stephens's evaluation, rating the firms on a scale of one to five in five categories. She further testified that Draper had

instructed her to make sure that a certain firm ranked highest. She testified that she had given the firm the maximum number of points in every category, but that Draper later changed one of the numbers to make the ranking look more legitimate. According to her testimony, the other firms were assigned random numbers, which Draper later tweaked. Draper acknowledged in his deposition that he had instructed Gendron to translate Stephens's qualitative analysis into a quantitative one, but he denied that he had ordered Gendron to rate the firms a certain way. Bill Gray, a Festus employee, testified that he had evaluated the engineering firms that sought to be City Engineer. Six firms ranked higher than the firm Draper recommended.

Draper authorized heating-system repairs costing more than $50,000 and the purchase of windows costing more than $2000 without seeking bids. As City Administrator, Draper could authorize purchases of less than $500, but needed three bids and City Council approval for purchases of more than $500 and was required to publish a request for bids for purchases of more than $5000. When he authorized the heating-system repairs, Draper prepared a memorandum explaining that the heating system required immediate repairs because of a risk of a carbon monoxide leak. The City Council approved Draper's actions based on the emergency situation. Two Festus employees testified at the hearing, however, that the problems with the heating system did not constitute an emergency, and one of the employees testified that she had informed Draper of her assessment before Draper authorized the repairs. In an unrelated matter, Draper did not seek bids or City Council approval before authorizing the purchase of windows costing more than $2000.

Draper issued a memo to all Festus employees in March 2011 stating that a bonus program would end. The memo provided, "Effective January 1, 2011, the $300.00 Sick Leave Bonus will no longer be paid to City of Festus employees who have used no sick time between January 1st and December 31st of any given year." Although other Festus employees recommended that Draper send the memo, the City Council had not yet decided whether to end the bonus program.

The final charge against Draper related to a request for reimbursement. Pat Parsons, a Festus employee, testified that Draper had requested a reimbursement check for an upcoming hotel stay and that she had said that he should wait to be reimbursed until after the charge was actually incurred. Nevertheless, Draper received the check in August 2010, although he did not cash it. When he stayed at the hotel in September 2010, he charged the room to his Festus credit card. He returned the uncashed check in October 2010 when Festus's accounting department requested its return.

Following the hearing, the City Council issued a written decision that affirmed Draper's termination and which found that Draper had manipulated the evaluation process to choose a certain engineering firm to complete the road project and to be City Engineer; that Draper had authorized repairs to the heating system and the purchase of new windows without competitive bidding, in violation of Festus policy; that Draper had sent a memorandum stating that the sick-leave-bonus program had been abolished when it had not been; and that Draper had requested reimbursement for a hotel room he had paid for with his Festus credit card.

Draper brought a myriad of claims under both state and federal law. The district court granted summary judgment to the City on all of the claims except two, which Draper then voluntarily dismissed.

## II. Standard of Review

We review the district court's grant of summary judgment *de novo*, using the same standard as the district court. Jetton, 121 F.3d at 424. "The question is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Id.

III. Due Process

Draper argues that the City's refusal to reschedule the post-termination hearing deprived him of both his procedural- and substantive-due-process rights. The City maintains that the June 27 hearing provided Draper with adequate post-termination review because Draper was given the opportunity to present evidence and cross-examine witnesses. "A public employee with a protected property interest in continued employment receives sufficient due process if he receives notice, an opportunity to respond to the charges before his termination, and post-termination administrative review." Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001). "[A]n employee waives a procedural due process claim by refusing to participate in post-termination administrative or grievance procedures made available by the state." Krentz v. Robertson Fire Prot. Dist., 228 F.3d 897, 904 (8th Cir. 2000). Draper did not appear for the hearing he requested, even though he had notice of the hearing and was available to attend. The City thus gave Draper an "adequate post-termination opportunity to be heard." Id. at 904-05. We conclude that the City's denial of his attorney's request to reschedule the hearing did not constitute a deprivation of Draper's Fourteenth Amendment right to procedural due process in the circumstances of this case.

Draper also contends that the City's refusal to reschedule the hearing constitutes a denial of his right to substantive due process because its conduct was so outrageous that it shocks the conscience. To be conscience shocking, the government action must be "truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of state law." Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc) (quoting Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1992)) (internal quotation marks omitted). The City's denial of counsel's request to reschedule does not rise to that level. See id. ("[T]he state violates substantive due process when it engages in conduct that is so outrageous that it shocks the conscience or otherwise offends 'judicial notions of fairness, [or is] offensive to

-6-

human dignity.'" (second alteration in original) (quoting <u>Weimer v. Amen</u>, 870 F.2d 1400, 1405 (8th Cir. 1989))).

## IV. Conspiracy

To state a claim for conspiracy under § 1983, Draper must show a deprivation of his constitutional rights. <u>Askew v. Millerd</u>, 191 F.3d 953, 957 (8th Cir. 1999). Draper has alleged only a due-process violation. Because Draper failed to establish such a violation, the district court did not err in granting summary judgment on the conspiracy claim.

## V. Breach of Contract

Draper argues that the district court should not have granted summary judgment to the defendants on his breach-of-contract claim. Under Missouri law, "[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." <u>Keveney v. Mo. Military Acad.</u>, 304 S.W.3d 98, 104 (Mo. 2010). The parties dispute only whether the facts viewed in the light most favorable to Draper establish a breach of the employment contract. The contract provided that Draper could be terminated at any time for "just cause," which was defined as misfeasance, malfeasance, or an act constituting gross dereliction of duty. Misfeasance is "[a] lawful act performed in a wrongful manner," or "[m]ore broadly, a transgression or trespass." <u>Black's Law Dictionary</u> 1015 (7th ed. 1999). Malfeasance is "[a] wrongful or unlawful act; esp[ecially], wrongdoing or misconduct by a public official." <u>Id.</u> at 968.

Viewing the evidence in the light most favorable to Draper, the undisputed facts establish that Draper's actions constituted, at the very least, misfeasance. Draper

admits that he sent a memorandum to Festus employees stating that the City Council had abolished the sick-leave-bonus program, even though the City Council had not yet made a decision regarding the program. It is also undisputed that Draper was required to obtain three bids and City Council approval before authorizing a purchase for more than $500 and that Draper authorized the purchase of windows for more than $2000 without obtaining bids or approval. These wrongful acts constitute, at the very least, misfeasance. Draper suggests that because the City Council knew about this misfeasance prior to Montgomery's election but took no action at that time, those acts could not constitute just cause under the contract. We agree with the district court, however, that the timing of the decision to terminate Draper had no bearing on whether he had engaged in conduct constituting misfeasance and whether that conduct supported his termination. Because cause existed to terminate Draper, he cannot establish breach of the employment contract, and thus the district court did not err in granting summary judgment on the breach-of-contract claim.

## VI. Missouri Administrative Procedure Act

Draper next contends that the district court erred when it reviewed the City Council's decision as a contested case under MAPA. He argues alternatively that even if this is a contested case, the City Council's decision was arbitrary and capricious and was not supported by substantial evidence.

Whether the City Council's termination decision was contested or noncontested determines the scope of judicial review under MAPA. The classification of a case as contested or noncontested is a matter of law that we review *de novo*. See City of Valley Park, Mo. v. Armstrong, 273 S.W.3d 504, 506 (Mo. 2009) (per curiam) (holding that the classification is determined as a matter of law); Sherpell v. Humnoke Sch. Dist. No. 5, 874 F.2d 536, 539 (8th Cir. 1989) (standard of review).
"The key to the classification of a case as contested or noncontested is the requirement of a hearing." Armstrong, 273 S.W.3d at 507. "Contested cases provide

the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law." Id. at 506 (quoting Furlong Cos. v. City of Kan. City, 189 S.W.3d 157, 165 (Mo. 2006)). Other procedural formalities used generally in contested cases include notice of the issues, the making of a record, and adherence to evidentiary rules. Id. at 507; see also Mo. Rev. Stat. §§ 536.063-536.090. By contrast, "[n]on-contested cases do not require formal proceedings or hearings before the administrative body." Armstrong, 273 S.W.3d at 506 (quoting Furlong, 189 S.W.3d at 165).

Draper does not dispute that he received notice of the hearing, that a hearing was held, that witnesses testified under oath, that exhibits were admitted, that a record was made, and that a written decision was rendered. Thus, this was a contested case. Had Draper attended the hearing, he could have sought to establish "the triviality of the charges against him," as they were characterized by his counsel on appeal, by cross-examining the witnesses and by presenting evidence on his behalf.

Draper also argues that the City Council decision was not supported by the evidence and that it was arbitrary and capricious. Judicial review of a contested case is governed by Missouri Revised Statutes sections 536.100 to 536.140. Furlong, 189 S.W.3d at 165. We review the record created before the administrative body to determine whether the agency decision is supported by competent and substantial evidence based on the whole record and whether the agency decision is arbitrary, capricious, or unreasonable. See id.; Mo. Rev. Stat. § 536.140(2). "Whether an action is arbitrary focuses on whether an agency had a rational basis for its decision," and "[c]apriciousness concerns whether the agency's action was whimsical, impulsive, or unpredictable." Mo. Nat. Educ. Ass'n v. Mo. State Bd. of Educ., 34 S.W.3d 266, 281 (Mo. Ct. App. 2000). The competent-evidence standard is not "met in the rare case when the [agency's decision] is contrary to the overwhelming weight of the evidence." Lagud v. Kan. City Bd. of Police Comm'rs, 136 S.W.3d 786, 791 (Mo. 2004)

(alteration in original) (quoting <u>Hampton v. Big Boy Steel Erection</u>, 121 S.W.3d 220, 223 (Mo. 2003)). An agency's decision may be supported by competent evidence "even though the evidence would also have supported a contrary determination." <u>Id.</u> at 791 n.5. In light of evidence recounted above, we conclude that the evidence before the City Council supported its decision to terminate Draper and that its decision to do so was not arbitrary, capricious, or unreasonable.

## VII. Conclusion

The district court's judgment is affirmed.

_____