

## *In the*
## *Missouri Court of Appeals*
### *Western District*

| | | |
|---|---|---|
| GENESIS SCHOOL, INC, | ) | |
| | ) | |
| Respondent, | ) | WD86457 |
| | ) | |
| V. | ) | OPINION FILED: |
| | ) | APRIL 23, 2024 |
| MISSOURI STATE BOARD OF EDUCATION, | ) | |
| | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Cotton Walker, Judge

Before Division Three: Cynthia L. Martin, Presiding Judge, Mark D. Pfeiffer, Judge and Edward R. Ardini, Jr., Judge

The Missouri State Board of Education ("State Board") appeals from the trial court's entry of a judgment that declared unlawful and arbitrary the State Board's decision to revoke the charter of Genesis School, Inc. ("Genesis"). The State Board argues that Genesis lacked standing to seek section 536.150[1] review of the State Board's decision. Finding no error, we affirm.

### Factual and Procedural History[2]

---

[1]All statutory references are to RSMo 2016 as supplemented through December 15, 2022.

[2]On appeal following a trial court's judgment in a section 536.150 proceeding to review an administrative agency's decision in a non-contested case, we review the trial

Genesis is a public charter school located in Kansas City, Missouri that educates students in kindergarten through eighth grade. The State Board is charged with supervising "the instruction in [] public schools" within the State of Missouri and serves as the head of the Missouri Department of Elementary and Secondary Education ("DESE"). Mo. Const. art. IX § 2(a).

Genesis's first public charter sponsor was the University of Missouri-Kansas City ("UMKC"). After UMKC stopped sponsoring charter schools in 2018, Genesis's new sponsor became the University of Missouri-Columbia ("MU"). In 2020, the State Board authorized MU's renewal of Genesis's charter through June 2025. After the State Board revoked MU's ability to serve as a sponsor for Genesis in 2022, the Missouri Charter Public School Commission ("Commission") became Genesis's new sponsor. The Commission is a state commission that sponsors public charter schools throughout the state. The Commission and Genesis entered into a new charter agreement with a term from July 1, 2022, until June 30, 2025. The new charter agreement between the Commission and Genesis included a performance contract mandating performance goals and a progressive notification system if Genesis was failing to meet those goals.

In September of 2022, the Commission sent Genesis a "Notice of Potential Closure" letter informing Genesis that it anticipated closing the school at the end of the 2022-2023 school year. The Commission then sent a letter on December 15, 2022,

court's judgment, rather than the decision of the administrative agency. *Ard v. Shannon County Comm'n*, 424 S.W.3d 468, 473 (Mo. App. S.D. 2014). We "view the evidence in the light most favorable to the judgment, while disregarding all contrary evidence and permissible inferences." *Id.*

definitively informing Genesis that the Commission intended to revoke Genesis's charter. Genesis timely requested a hearing before the Commission pursuant to section 160.405.8(3). On January 30, 2023, the Commission conducted a hearing pursuant to procedures it had established as required by section 160.405.8(4). During that hearing, the Commission presented evidence of the reasons for revocation of Genesis's charter, and Genesis presented evidence refuting that there was a proper basis for revoking its charter. On February 15, 2023, the Commission adopted a resolution revoking Genesis's charter citing as the authority for its decision section 160.405.8(1)(b)(a), which authorizes revocation of a charter "if there is clear evidence of underperformance as demonstrated in the charter school's annual performance report in three of the last four school years." The Commission's resolution notified Genesis that its decision was subject to an appeal to the State Board pursuant to section 160.405.8(4).

By letter dated March 10, 2023, Genesis exercised its right to appeal the Commission's revocation decision to the State Board. Genesis argued that the Commission's revocation of Genesis's charter constituted a breach of the parties' charter agreement, and that the Commission's decision to revoke the charter was unlawful because it was not based on any allowable reason for revocation set forth by statute or in the charter agreement. Genesis's written request for an appeal asked the State Board to reverse the Commission's decision and to reinstate Genesis's charter.

The State Board considered Genesis's appeal during a regularly scheduled meeting on April 24, 2023, that was conducted by video conference. The meeting was open to the public for observation and began at 11:03 a.m. The minutes of the meeting reflect that

3

after conducting other regular business a motion was made and seconded to revoke Genesis's charter. The motion passed and the State Board's meeting adjourned at 11:32. Notes were prepared for the meeting by M.V., the Commissioner of Education and chief administrative officer for the State Board. M.V.'s notes indicate that "based on all of the materials submitted, it is clear that the [] Commission revocation process was deficient." Among other things, the notes indicate that although the Commission's notice of revocation cited Genesis's underperformance on the annual performance reports for three of the last four years, the Commission acknowledged that it did not rely on annual performance report scores when it decided to revoke Genesis's charter. The notes further indicated that "[t]here are other legal concerns with how the [] Commission conducted this revocation, as far as its policies, work with the charter, language in its performance contract, and adherence to the requirements of the performance contract." The State Board nonetheless voted to revoke Genesis's charter because it believed "Genesis has a long history of failing to provide quality education for its students, and intervention by the State Board to place it with a new sponsor was unsuccessful."

Following the State Board's decision, Genesis filed a petition for judicial review of a noncontested administrative agency decision pursuant to section 536.150 in the Circuit Court of Cole County, Missouri. In its petition, Genesis asserted Counts I through V against the Commission and Count VI against the State Board. The State Board filed a motion to dismiss Count VI arguing, (as it does in this appeal), that Genesis lacked standing to seek judicial review under section 536.150 because it is a public entity. The Commission also filed a motion to dismiss similarly arguing that Genesis lacked standing

4

to pursue judicial review under section 536.150 because it is a public entity. The trial court denied both motions.

Prior to trial, the parties submitted a joint stipulation of facts and exhibits. During trial some additional evidence was submitted although the State Board called no witnesses. On June 21, 2023, the trial court entered a judgment ("Judgment") which included findings of fact and conclusions of law. Among other things, the trial court found with respect to the Commission that: (i) the Commission's published policies related to revocation do "not include a statutory requirement that the Commission revoke a charter if the charter school's academic performance is below that of the resident district for three of the last four years"; (ii) the wording of the Commission's resolution revoking Genesis's charter and the testimony of the Commission's executive director make clear that the decision to revoke Genesis's charter relied only on the ground that there was clear evidence of underperformance as demonstrated in Genesis's annual performance reports in three of the last four school years; (iii) annual performance reports for Genesis for three of the last four school years did not exist at the time the Commission revoked Genesis's charter because there were no useable reports for school years 2020 and 2021;[3] (iv) though the Commission could not have relied on annual performance reports for three of the last four school years to revoke Genesis's charter, the Commission did not claim that it revoked Genesis's charter for any other reason; (v) the Commission's executive director admitted that revocation of Genesis's charter was not based upon or

_____

[3]The record reflects this was due to the COVID-19 pandemic.

supported by the Commission's policies or the terms of the charter agreement; and (vi) Genesis presented evidence to show that there are no other grounds for revocation, which the trial court credited.

Among other things, the trial court found with respect to the State Board that: (i) the State Board's chief administrative officer admitted there were deficiencies in the Commission's revocation processes; (ii) the State Board knew the Commission's process failed to meet necessary standards; (iii) the State Board "did not undertake any objective review itself but instead essentially ratified the revocation"; (iv) the State Board "considered no data and relied on no standards or criteria to make its decision;" (v) the State Board offered the trial court "no evidence concerning its decision other than the official minutes, which state there was a motion, which was seconded and adopted"; and (vi) though Genesis and Commission witnesses testified that they provided information to the State Board in advance of the State Board's consideration of Genesis's appeal, "there was no evidence that the State Board ever considered--or even saw-- that information."

Based on the aforesaid factual findings, the trial court concluded as a matter of law[4] that: (i) the matter it was considering was a noncontested case because there was no formal proceeding or hearing before an administrative body, and thus there was no agency record created for the trial court to review; (ii) the Commission's action in revoking Genesis's charter was unlawful because it was based on performance data that did not exist and could not have been relied on, and because the Commission breached

_____

[4]The trial court's conclusions of law were lengthy and detailed, and have been summarized for purposes of this Opinion.

the charter agreement with Genesis; and (iii) the State Board's revocation of Genesis's charter was unlawful and arbitrary, whether viewed as a ruling on appeal or as some exercise of the State Board's independent authority to revoke a charter (which the trial court held the State Board does not appear to have absent lawful revocation by a sponsor). The Judgment ordered and decreed that Genesis's charter be reinstated and enjoined the Commission and the State Board from taking any actions based on the unlawful decision to revoke Genesis's charter.

The State Board filed this appeal from the Judgment. The Commission did not appeal the Judgment.

### Genesis's Motion to Dismiss Appeal as Moot

Genesis has filed a motion to dismiss the State Board's appeal as moot. "The mootness of a controversy is a threshold question in any appellate review of that controversy." *Odermann v. Mancuso*, 670 S.W.3d 461, 469 (Mo. App. W.D. 2023) (quoting *Two Pershing Square, L.P. v. Boley*, 981 S.W.2d 635, 638 (Mo. App. W.D. 1998)). "A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *Id.* (quoting *Bernhardt v. McCarthy*, 467 S.W.3d 348, 350-51 (Mo. App. W.D. 2015)). "When an event occurs that makes a court's decision unnecessary or makes it impossible for the court to grant effectual relief, the case is moot and generally should be dismissed." *Benjamin Banneker Charter Acad. v. Jones*, 580 S.W.3d 1, 5 (Mo. App. W.D. 2019) (citation omitted).

7

Genesis claims that any decision this court might render in resolving the State Board's appeal would have no practical effect because the Judgment ordered the Commission to reinstate Genesis's charter. Genesis argues that its public charter is a contract between itself and the Commission and that because the State Board is not a party to the charter agreement a decision in this appeal will have no effect such that the State Board is effectively "appealing a ruling about another party's contract when that other party is content to honor the contract." We disagree.

Pursuant to section 160.405.8(4), "[f]inal decisions of a sponsor from hearings conducted pursuant to this subsection are subject to an appeal to the state board of education, which shall determine whether the charter shall be revoked." While not specifically defined in chapter 160, an "appeal" is commonly understood to be a "proceeding undertaken to have a decision reconsidered by a higher authority; [especially], the submission of a lower court's or agency's decision to a higher court for review and possible reversal." BLACK'S LAW DICTIONARY 121 (11th ed. 2019); *see also Richest v. City of Kansas City*, 643 S.W.3d 610, 614 (Mo. App. W.D. 2022) ("[a]bsent a statutory definition, words used in statutes are given their plain and ordinary meaning with help, as needed, from the dictionary"). Review and reversal of the Commission's revocation decision is precisely the relief Genesis sought when it filed a notice of appeal with the State Board. Genesis thus recognized that the State Board's decision on appeal would be binding and controlling and would effectively supersede the Commission's decision consistent with the commonly understood definition of "appeal."

Consistent with viewing the State Board's decision as controlling, the trial court found in its Judgment that the matter before it involved review of a noncontested case pursuant to section 536.150[5] because there was no formal proceeding or hearing before an administrative body and no agency record created for the trial court to review.[6] Genesis does not contest this legal conclusion, no doubt because noncontested review of an administrative agency decision pursuant to section 536.150 was the avenue for relief Genesis pursued from the trial court.

When the trial court concluded that it was conducting judicial review of a noncontested case pursuant to section 536.150, it could not have been referring to the decision of the Commission. The Commission determined Genesis's legal rights, duties or privileges as required by law after a hearing with the procedural formalities of notice, the making of a record, and the right to present evidence and witness testimony, consistent with the attributes of a contested case. *See City of Valley Park v. Armstrong*,

---

[5]The Missouri Administrative Protection Act (MAPA) classifies judicial review of administrative agency decisions as either review of contested cases pursuant to section 536.100 or review of noncontested cases pursuant to section 536.150.

[6]The trial court's legal conclusion is important as "[l]ike proceedings in the circuit court, 'appellate review of contested and noncontested cases are governed by different standards.'" *Holden v. Dep't of Com. and Ins.*, 590 S.W.3d 878, 884 (Mo. App. W.D. 2019) (quoting *Sanders v. City of Columbia*, 481 S.W.3d 136, 144 n.7 (Mo. App. W.D. 2016)). In contested cases we are required to review the record made during proceedings before the administrative body or agency, while in noncontested cases we review the record made before the trial court. *See Sovulewski v. Mo. State Bd. of Nursing*, 642 S.W.3d 373, 377-79 (Mo. App. E.D. 2022). "The classification of a case as 'contested' or 'noncontested' is determined as a matter of law." *Halderman v. City of Sturgeon*, 670 S.W.3d 193, 201 (Mo. App. W.D. 2023) (quoting *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. banc 2009)). As we explain, we agree with the trial court's legal conclusion that the matter before it involved judicial review of a noncontested case by an administrative agency pursuant to section 536.150.

9

273 S.W.3d 504, 507 (Mo. banc 2009); *Furlong Cos., Inc. v. Kan. City*, 189 S.W.3d 157, 165 (Mo. banc 2006); *McCoy v. Caldwell Cnty.*, 145 S.W.3d 427, 428 (Mo. banc 2004); *Pro. Fire Fighters of E. Mo., Int'l Ass'n of Fire Fighters, Loc. 2665 v. City of Richmond Heights*, 680 S.W.3d 134, 140 (Mo. App. W.D. 2023); *Halderman v. City of Sturgeon*, 670 S.W.3d 193, 201 (Mo. App. W.D. 2023). Of course, Genesis did not seek contested case judicial review of the Commission's administrative agency decision pursuant to section 536.100. Nor could it have as section 536.100 expressly provides for judicial review of an agency decision only if the person seeking review "has exhausted all administrative remedies provided by law" and "is aggrieved by a final decision in a contested case[.]" Section 536.100. Here, the right to appeal to the State Board remained as an additional administrative remedy to be exhausted after the Commission's decision, and the State Board's decision following an appeal was controlling such that the Commission's decision was not a final decision. As a result, judicial review of the Commission's decision could not have been sought under section 536.100 as a matter of law.

Instead, the State Board's decision, which was not subject to any further administrative review, which determined Genesis's rights, duties and privileges, and as to which no other provision is made for judicial inquiry or review,[7] is the only

---

[7]Judicial inquiry into or review of the State Board's decision would not have been available pursuant to section 536.100 because, although the State Board's decision is a final decision as to which no further administrative remedies remained to exhaust, the proceedings before the State Board were plainly not a contested case. Unlike the revocation proceedings before the Commission, which were required by section 160.405.8(3) and (4) to be by hearing conducted pursuant to established procedures

10

administrative decision that the trial court's Judgment could have been referring to as subject to judicial review pursuant to section 536.150 noncontested case review.[8] *See Holden v. Dep't of Com. and Ins.*, 590 S.W.3d 878, 883 (Mo. App. W.D. 2019) (observing that noncontested cases, while not explicitly defined in section 536.150, are "simply those that involve agency decisions that are 'not required by law to be determined after a hearing'") (quoting *Furlong Cos., Inc.*, 189 S.W.3d at 165); *Pro. Fire Fighters of E. Mo., Int'l Ass'n of Fire Fighters, Loc. 2665*, 680 S.W.3d at 141 (observing that in a noncontested case there is no requirement for any formal proceedings before the administrative body or agency). Consistent with this observation, the trial court found that whether viewed as a ruling on appeal or as an independent decision to revoke, the State Board's decision to revoke Genesis's charter was unlawful and arbitrary because the Commission's underlying decision was unlawful (and could not have been affirmed by the State Board on appeal), and because no substantial evidence was presented to the State Board to permit it to independently revoke Genesis's charter.

The State Board's appeal to this court argues that as a public entity Genesis did not have standing to pursue judicial review of the State Board's decision to the trial court

---

adopted by the Commission, the appeal taken to the State Board following a Commission's revocation decision is not required by section 160.405.8(4) to be by hearing pursuant to established procedures.

[8]The Commission's role as a party in Genesis's section 536.150 action filed in the trial court is suspect. The Commission's decision was not independently eligible for section 536.150 judicial review because it was subject to additional administrative review that would have a binding effect. *See* section 536.150. However, no one has raised the Commission's status as a party in the proceedings before the trial court as an issue in this appeal.

11

pursuant to section 536.150. If we agree with the State Board then the Judgment must be reversed which would restore the State Board's binding decision to revoke Genesis's charter. If we disagree with the State Board then the Judgment will be affirmed leaving the trial court's order to reinstate Genesis's charter and the trial court's award of injunctive relief in effect. Our resolution of the State Board's appeal will plainly have a practical effect on an existing controversy.

Genesis's motion to dismiss the State Board's appeal as moot is denied. We turn our attention to the merits of the appeal.

## Analysis

In its sole point on appeal, the State Board argues that the trial court erred in overturning the State Board's decision to revoke Genesis's charter and in finding that the State Board's decision was unlawful and arbitrary because Genesis, as a public entity, did not have standing to seek judicial review of the State Board's decision under section 536.150. The State Board's point on appeal does not challenge any of the factual findings or legal conclusions in the Judgment and argues only that the trial court's Judgment is void because when a party lacks standing to assert a claim a trial court must dismiss the claim because it lacks the authority to decide the merits of the claim.

"This Court reviews the issue of standing *de novo*." *Mo. Coal. for Env't v. State*, 579 S.W.3d 924, 926 (Mo. banc 2019) (quoting *Mo. State Med. Ass'n v. State*, 256 S.W.3d 85, 87 (Mo. banc 2008)). "Courts have a duty to determine if a party has standing prior to addressing the substantive issues of the case." *Stichler v. Jesiolowski*, 547 S.W.3d 789, 792 (Mo. App. W.D. 2018). "We determine standing as a matter of law

12

by examining the petition 'along with any other noncontested facts accepted as true by the parties . . . .'" *Campbell v. Adecco USA, Inc.*, 561 S.W.3d 116, 120 (Mo. App. W.D. 2018) (quoting *Corozzo v. Wal-Mart Stores, Inc.*, 531 S.W.3d 566, 572 (Mo. App. W.D. 2017)). "As the party seeking relief, [Genesis] bore the burden of establishing standing." *Save-a-Connie, Inc. v. Executive Beechcraft, Inc.*, 671 S.W.3d 815, 822 (Mo. App. W.D. 2023) (citation omitted).

In concept the State Board is correct that "[i]f a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim." *Weber v. St. Louis Cnty.*, 342 S.W.3d 318, 323 (Mo. banc 2011) (citation omitted). Here, the State Board's standing argument is not based on a claim that Genesis lacks a personal interest in the State Board's decision arising from a threatened or actual injury, the traditional argument raised when standing is challenged. *See id.*; *Mo. Coal. for Env't*, 579 S.W.3d at 926. Instead, the State Board argues that as a matter of law Genesis is a public entity that has no standing to seeking judicial review pursuant to section 536.150.

The State Board's contention implicates an issue of statutory construction. "In determining a statute's meaning, this Court's primary goal is to ascertain and give effect to the legislature's intent, as evidenced by the plain and ordinary meaning of the words used." *Charter Commc'ns Ent. I, LLC v. Dir. of Revenue*, 667 S.W.3d 84, 87 (Mo. banc 2023) (citing *Beyond Housing, Inc. v. Dir. of Revenue*, 653 S.W.3d 400, 406 (Mo. banc 2022)).

13

"The Missouri Administrative Protection Act (MAPA) . . . sets forth procedures to be followed in certain administrative practices and also establishes the methods of review for decisions made by administrative agencies." *State ex rel. School Dist. of Kansas City v. Williamson*, 141 S.W.3d 418, 423 (Mo. App. W.D. 2004). It is uncontested that the State Board is an administrative agency subject to the MAPA.[9] Noncontested case review pursuant to section 536.150 of the MAPA is permitted as follows:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of *any person*, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit . . . .

(Emphasis added.) Although not defined within chapter 536, section 1.020(12) provides that "[a]s used in the statutory laws of this state, unless otherwise specially provided or unless plainly repugnant to the intent of the legislature or context thereof: . . . the word 'person' *may* extend and be applied to bodies politic and corporate . . . ." (emphasis added); *see e.g., Estes as Next Friend for Doe v. Bd. of Trs. of Mo. Pub. Entity Risk Mgmt. Fund*, 623 S.W.3d 678, 707 (Mo. App. W.D. 2021) (finding the Missouri Public Entity Risk Management Fund, a corporation and public entity created by statute, to be a "person" as defined by section 1.020(12)).

---

[9]"Agency" is defined in pertinent part by section 536.010(2) of the MAPA as "any administrative officer or body existing under the constitution or by law and authorized by law or the constitution to make rules or to adjudicate contested cases . . . ." The State Board exists pursuant to the authority of the Missouri Constitution, article IX, § 2(a). The State Board is authorized by statute to make rules. *See, e.g.*, section 160.514.1.

14

By statute, a charter school is required to be a not for profit corporation, and the issuance of a charter is declared to "constitute a contract between the sponsor and the charter school." Section 160.400.7. Section 160.405.1 further provides that the charter issued to a charter school "shall include a legally binding performance contract that describes the obligations and responsibilities of the school and the sponsor . . . ." We see nothing repugnant to the intent of the legislature or the context of the MAPA to construe the word "person" to include charter schools within its scope as these not for profit corporate entities have private contractual rights in the form of a charter that can be impacted by an administrative agency decision. This conclusion is consistent with the fact that judicial review of all final decisions from an administrative body affecting private rights is guaranteed by the Missouri Constitution. Mo. Const. art. V § 18.

The State Board nonetheless argues that entities like Genesis are not within the intended scope of the word "person" as used in in the MAPA because they are public entities. This exclusion is not expressed in the MAPA. But, the State Board claims that controlling decisional law limits the word "person" as used in MAPA to "private individuals whose individual rights are affected by an administrative decision." The State Board relies on *State ex rel. St. Francois Cnty. Sch. Dist. R-III v. Lalumondier*, 518 S.W.2d 638, 643 (Mo. 1975) where our Supreme Court noted that section 536.150 "clearly comprehends only decisions involving individual rights and interests" to argue that public entities like Genesis have no standing to pursue judicial review under section 536.150 as a matter of law. We disagree.

15

In *Lalumondier*, a school district attempted to challenge a board of equalization determination that failed to increase the assessed valuation of real property not owned by the school district but within the school district's boundaries. *Id.* at 639-40. The Supreme Court held that the school district had no standing to pursue review of the board of equalization decision under section 138.430(2), which addresses the right of appeal from a board of equalization decision, and which limits that right of appeal to property owners. *Id.* at 640-41. The Supreme Court then explored the school district's alternative argument that it was entitled to judicial review under section 536.150 because section 18, article V of the Missouri Constitution[10] provides, in pertinent part, that "[a]ll final decisions, findings, rules and orders of any administrative officer or body . . . which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law. . . ." *Id.* at 641. The Supreme Court noted that the Missouri Constitution "provides for a review of decisions that 'affect private rights' and that [s]ection 536.150 provides for a court review of decisions 'determining the legal rights, duties or privileges of any person[.]'" *Id.* at 643. The Supreme Court concluded that although a school district, which receives revenue based on the assessed value of real property owned by others, has a "vital interest in the assessment valuation of the property," that "public interest" does not rise to the level of a private right relating to a personal claim subject to protection by the Missouri Constitution and section 536.150. *Id.*

---

[10]At the time *Lalumondier* was decided this provision appeared in section 22, article V of the Missouri Constitution.

16

*Lalumondier* did not hold that public entities are not "persons" with standing to pursue judicial review under section 536.150 as a matter of law. Instead, *Lalumondier* stands for the simple proposition that the indirect impact of an administrative agency's decision on a "public interest" is not a "private right" involving a "personal claim" sufficient to support standing to pursue section 536.150 judicial review. Unlike the school district in *Lalumondier*, Genesis possesses a direct "private right" in and to the charter it holds by virtue of a contractual relationship with the Commission, and thus a "personal claim" if that private right is directly impacted by revocation of the charter. Genesis has standing to protect that private right pursuant to judicial review under the MAPA. *See, e.g., Hope Acad. Corp. v. Mo. State Bd. of Educ.*, 462 S.W.3d 870, 873 (Mo. App. W.D. 2015) (where charter school sought declaratory relief to determine State Board's authority to review sponsor's decision not to renew charter); *State ex. rel Saint Louis Charter Sch. v. State Bd. of Educ.*, 438 S.W.3d 437, 441-42 (Mo. App. W.D. 2014) (where charter school brought mandamus action pursuant to section 536.150 to compel State Board and the DESE to pay state aid to the charter school); *and Williamson*, 141 S.W.3d at 423-24 (holding that "[t]he MAPA is applicable to local school boards (and districts), as they are created by state statute, from which they obtain rulemaking and adjudicatory authority" and entertaining appellate review of charter school's request for a writ of prohibition under the MAPA after its charter was not renewed).

The State Board also argues that charter schools have no standing to seek judicial review under the MAPA because 2012 amendments to section 160.405 removed this right. Prior to 2012 amendments, section 160.405.7(4) provided as follows:

The sponsor of a charter school shall establish procedures to conduct administrative hearings upon determination by the sponsor that grounds exist to revoke a charter. Final decision of a sponsor from hearings conducted pursuant to this subsection are subject to ***judicial review pursuant to chapter 536.***

(Emphasis added.) Following the 2012 amendments, the amended provision which now appears in section 160.405.8(4) provides as follows:

The sponsor of a charter school shall establish procedures to conduct administrative hearings upon determination by the sponsor that grounds exist to revoke a charter. Final decision of a sponsor from hearings conducted pursuant to this subsection are subject to ***an appeal to the state board of education, which shall determine whether the charter shall be revoked***.

(Emphasis added.) S.B. 576, 96th Gen. Assembly, 2d Reg. Session (2012). The State Board argues that the General Assembly's 2012 removal of reference to chapter 536 in section 160.405.8(4) requires the conclusion that no judicial review under the MAPA is permitted following charter revocation. The State Board supports this argument by observing section 160.415.5, which also refers to chapter 536 review, remained unchanged following the 2012 amendments to chapter 160. The State Board suggests this demonstrates that "the legislature evidenced its desire to allow judicial review under Chapter 536 only in limited circumstances." We disagree.

"This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 122 (Mo. banc 2023) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014)). "While later statutory amendments _may_ signal the General Assembly's desire to change the law, in amending a statute 'the legislature's

18

purpose may be to clarify and detail an existing law." *State v. Sander*, 682 S.W.3d 85, 95 (Mo. App. W.D. 2023) (quoting *Mann v. McSwain*, 526 S.W.3d 287, 292 (Mo. App. W.D. 2017)). Furthermore, when "construing a statute, the Court must presume the legislature was aware of the state of the law at the time of its enactment." *D.E.G. v. Juv. Officer of Jackson Cnty.*, 601 S.W.3d 212, 216 (Mo. banc 2020) (quoting *Suffian v. Usher*, 19 S.W.3d 130, 133 (Mo. banc 2000)).

We find no basis to conclude that the 2012 amendments to chapter 160 signaled legislative intent to prohibit judicial review pursuant to the MAPA after revocation of a charter. The pre-2012 language that appears in section 160.405.7(4) simply clarifies that no further administrative review is available to a charter school once its charter is revoked by its sponsor. The post-2012 language that now appears in section 160.405.8(4) simply adds a layer of administrative review that must be exhausted by a charter school after a sponsor revokes the charter school's charter. The addition of another layer of administrative review following charter revocation cannot be reasonably read to suggest the *sub silentio* intent to deprive a charter school of standing to seek judicial review pursuant to the MAPA once all administrative remedies. That is particularly so given the legislative intent plainly expressed in section 536.150 to provide a remedy of judicial review of final administrative agency decisions where "there is no other provision for judicial inquiry into or review of such decision."

Further, although the 2012 amendments to chapter 160 left intact the reference to chapter 536 review in section 160.415.5, that section merely provides that no further administrative remedies need be exhausted after DESE resolves a dispute between a

19

charter school and a school district over the payment of state school aid, and thus clarifies that the DESE decision is the final administrative agency decision from which section 536 judicial review can be taken.[11]

Finally, in subpart "F" under the State Board's sole point relied on, the State Board alleges that the issue before us is "ripe for appellate review because the State Board is not bound by any alleged procedural shortcomings of [the Commission]." Though "ripeness" is relevant to resolving the mootness issue raised by Genesis in its motion to dismiss the State Board's appeal, it is not relevant to resolving the issue of Genesis's standing to pursue judicial review under section 536.150, the only challenge raised by the State Board's point relied on. On that basis alone, the entirety of this subpart is not preserved for our review. *Wilson v. Trusley*, 624 S.W.3d 385, 399 n.13 (Mo. App. W.D. 2021) (holding that arguments contained within a party's brief that exceed the scope of a point relied on are not preserved for our review).

Moreover, the State Board develops multiple, distinct arguments under this subpart, not all of which involve ripeness. The State Board first argues that the State Board's decision following an appeal permitted under section 160.405.8(4) is controlling, rendering the sponsor's revocation decision immaterial. As we have already explained, *supra*, in addressing (and rejecting) Genesis's motion to dismiss this appeal as moot, the

---

[11]The State Board's reliance on section 160.415.5, and thus its concession that chapter 536 review is available to any school district or charter school aggrieved by a DESE decision involving the division of state school aid, eviscerates the State Board's earlier contention that "public entities" have no standing to pursue section 536.150 review, as both charter schools and school districts are public entities.

20

State Board's contention that its revocation decision is the controlling final administrative agency decision is correct.

The State Board also argues that once it determined that Genesis's charter should be revoked, "the case should have ended there," because no further review is available. This assertion is without merit as it depends for its success on the State Board's earlier (and now rejected) contentions that Genesis did not have standing to seek judicial review pursuant to section 536.150 because it is a public entity and because the 2012 amendments to section 160.405 eliminated that right.

Finally, the State Board argues that irregularities which doomed the lawfulness of the Commission's determination to revoke Genesis's charter are immaterial because the State Board had an independent right to revoke Genesis's charter untethered from the Commission's findings and procedural irregularities, and not limited by sponsor-level criteria for revocation set forth by statute or in Genesis's charter. This argument is neither a ripeness argument that is relevant to Genesis's claim that this appeal is moot, nor a standing argument. Instead, this argument constitutes a substantive challenge to the trial court's factual findings and legal conclusion that, whether viewed as a determination to affirm the Commission's revocation consistent with appellate review, or as an independent decision to revoke Genesis's charter, the State Board's revocation decision was unlawful and arbitrary. The Board's argument far exceeds the scope of the its point

on appeal. Rule 84.04(e).[12] As a result, the argument is not preserved for our review and will not be addressed. *See Wilson*, 624 S.W.3d at 399 n.13.

We conclude that Genesis had standing to pursue judicial review of the State Board's determination to revoke Genesis's charter under section 536.150.

Point One is denied.

### Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Presiding Judge

All concur

---

[12] All rule references are to *Missouri Court Rules, Volume 1 -- State, 2023* unless otherwise noted.

22